671 F.2d 300
 Robert HALL, Appellant,
v.
BIO-MEDICAL APPLICATION, INC.; National Medical Care, Inc.;
and Melanie Flannigan, Appellees.
Robert HALL, Appellee,
v.
BIO-MEDICAL APPLICATION, INC.; National Medical Care, Inc.;
and Melanie Flannigan, Appellants.
 Nos. 81-1879, 81-1924.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1982.
Decided Feb. 24, 1982.
 
 Kaplan, Hollingsworth, Brewer & Bilheimer, P. A. by P. A. Hollingsworth, Janet L. Pulliam, argued, Little Rock, Ark., for appellant/cross-appellee.
 Robert D. Cabe, argued, Allen, Cabe & Lester, Little Rock, Ark., for appellees/cross-appellants.
 Before HENLEY, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 HENLEY, Circuit Judge.
 
 
 1
 Plaintiff Robert Hall is a black male resident of Little Rock, Arkansas, who suffers from kidney disease and requires hemodialysis treatment several times a week. From March, 1978 to May, 1979 Hall received his treatment, as prescribed by his physician, Dr. Brewer, at Bio-Medical Application (BMA), an outpatient hemodialysis facility.[1] Plaintiff asserts that during this time he and other black patients were subjected to racial discrimination by the staff of BMA, and that on May 18, 1979 an incident occurred in which the nurse supervisor, Melanie Flannigan, called him a "black son of a bitch" and removed him from the dialysis machine, leaving the dialysis needles in his arm. Plaintiff left the facility and later removed the needles himself, causing a substantial blood loss. After the May 18 incident, plaintiff continued in the care of Dr. Brewer, but received his hemodialysis treatment at the Baptist Medical Center.
 
 
 2
 On October 15, 1979 Hall filed the present complaint, which was amended on September 16, 1980, charging defendants with violating 42 U.S.C. § 1981, medical malpractice, and intentional infliction of emotional distress. The district court denied plaintiff's application for class certification and, following a nonjury trial, found that plaintiff had failed to sustain his burden of proof with respect to the § 1981 claim and the claim of intentional infliction of emotional distress. However, judgment was entered for plaintiff on his pendent claim of medical malpractice in the amount of $4,500.00. Plaintiff now appeals the denial of his § 1981 claim and the denial of class certification. Defendants cross-appeal the court's finding of medical malpractice. We affirm the judgment of the district court.[2]
 
 
 3
 I. § 1981.
 
 
 4
 Plaintiff first contends that the trial court erred in denying his § 1981 claim. The district court stated in its findings of fact and conclusions of law that plaintiff had failed to meet the applicable burden of proof requirements as set forth in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981).[3] In support of his contention, plaintiff relies on affidavits and testimony of former employees of BMA who stated that white patients were given priority in scheduling, that black patients were treated with less sensitivity and disciplined more severely than white patients, that black patients' dialysis had on occasion been rushed, and that nurse Flannigan made disparaging racial remarks. Plaintiff also argues that the May 18 incident described above further supports a finding of unlawful discrimination resulting in the deprivation of his protected right "to make and enforce contracts." 42 U.S.C. § 1981.
 
 
 5
 After reviewing the record, we conclude that if plaintiff established a prima facie case of unlawful discrimination, defendants effectively rebutted it by articulating a legitimate, nondiscriminatory reason for plaintiff's termination as a client of BMA; and further, that plaintiff failed to show this reason to be a mere pretext for discrimination. See Texas Department of Community Affairs, 450 U.S. at 252-53, 101 S.Ct. at 1093-94. Defendants offered evidence, and the district court found, that plaintiff had on several occasions become disruptive and had used obscene and abusive language. For example, on September 8, 1978 Hall became upset and shouted obscenities when he demanded to speak to Flannigan, who had left for the day. His hemodialysis was terminated early because he threatened to remove the dialysis needles himself. On September 13, he again became angry when a BMA employee refused to discuss the September 8 incident, and left without receiving his treatment. The district court also found that on May 14, 1979 plaintiff called the BMA social worker and threatened to cause some trouble, a threat he repeated on May 16 when he reported for his treatment. Finally, on May 18, Hall became angry and used obscene language after he was asked to hang up an extension phone while Flannigan was engaged in a long distance call. It was at this point that Flannigan called plaintiff a "black son of a bitch" and removed him from the machine.
 
 
 6
 Although Flannigan's behavior was clearly unprofessional, we conclude that plaintiff's repeated disruptive and abusive conduct constituted a legitimate nondiscriminatory justification, which was not shown to be pretextual, for terminating his contractual relationship with BMA.
 
 
 7
 II. CLASS CERTIFICATION.
 
 
 8
 Plaintiff next contends that the district court erred in refusing to grant class certification, the class being all black patients of BMA. The district court denied certification on the ground that plaintiff failed to comply with its General Order No. 6, requiring that a motion for class certification be made within ninety days after the case is filed, although a late motion may be considered upon a finding of excusable neglect or good cause for the delay. The present action was filed on October 15, 1979. On January 10, 1980 plaintiff was granted an extension until thirty days after the filing of defendants' answers to interrogatories. The answers were filed on January 18, but plaintiff failed to file the motion for certification within thirty days, and the case was removed from the class action docket of February 25. Plaintiff moved for reinstatement on April 8, arguing that counsel for both parties had orally agreed to a further extension, which agreement was denied by defendants. The court, after noting that it was not bound by plaintiff's and defendants' alleged private agreement, concluded that plaintiff had failed to show good cause or excusable neglect sufficient to justify reinstatement of the class action, particularly since plaintiff did not move for reinstatement until six weeks after the expiration of the extension granted by the court. We cannot say the district court abused its discretion. Furthermore, we are not persuaded that plaintiff has demonstrated the requisite factors making a class action appropriate in this case-for example, numerosity, common questions of law and fact, typicality, and actions by defendants on grounds generally applicable to the class. See Fed.R.Civ.P. 23; Wright v. Stone Container Corp., 524 F.2d 1058, 1061-62 (8th Cir. 1975).
 
 
 9
 III. DEFENDANTS' CROSS-APPEAL.
 
 
 10
 Defendants contend that the trial court erred in finding defendants liable to plaintiff for medical malpractice based on the May 18 incident. It is submitted that the procedure used to disconnect plaintiff from the hemodialysis machine was routine and that the needles were left in place in case plaintiff returned to the machine to finish his treatment. Instead, Hall refused all offers of assistance, left the facility, and removed the needles himself.
 
 
 11
 The district court was not unaware of defendant's provoking behavior, and allocated forty per cent of the fault to plaintiff pursuant to Arkansas' comparative fault statute. However, defendants' justification of the medical procedure used to disconnect plaintiff from the hemodialysis machine overlooks the court's emphasis on Flannigan's overall treatment of Hall. "Her behavior did not conform to the high standards we necessarily expect of those in the nursing profession.... Under extreme provocation, she engaged in language and conduct ... unacceptable in a highly trained professional." We find sufficient evidence to support the district court's findings with respect to plaintiff's claim of medical malpractice.
 
 
 12
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Defendant BMA allegedly is a corporate subsidiary of corporate defendant National Medical Care, Inc. The parent corporation was never served with process and the case went to trial against BMA and its employee Flannigan
 
 
 [2]
 The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas
 
 
 [3]
 The burden of proof requirements set forth in Burdine, a Title VII case, are also applicable to § 1981 claims. Kenyatta v. Bookey Packing Co., 649 F.2d 552, 554 (8th Cir. 1981)