Emmett **DICKERSON**, Jr., Plaintiff,

v.

**CITY BANK & TRUST COMPANY,
et al., Defendants.**

Civ. A. No. 82–4112.

United States District Court,
D. Kansas.

June 29, 1984.

Fred W. Phelps, Jr., Phelps-Chartered, Topeka, Kan., for plaintiff.

Mikel L. Stout, Amy S. Lemley, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, Chief Judge.

This matter is presently before the court on plaintiff's application for attorney's fees and on defendant City Bank and Trust Company's [City Bank] motion to alter or amend the judgment. We have reviewed the memoranda submitted by the parties and are now prepared to rule.

Plaintiff filed his action on May 18, 1982, alleging, *inter alia,* violations of 42 U.S.C. §§ 1981, 1983, and 1985. On January 5, 1983, the plaintiff moved to amend his com- plaint to add a cause of action for recovery under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, *et seq.*). In an opinion appearing at 575 F.Supp. 872, Judge Richard Rogers of this court denied the motion to amend. This denial was based on the futility of allowing the amendment because plaintiff had not timely filed his charge with the EEOC, and would subsequently lose on the merits. *But see Smith v. Oral Roberts Evangelistic Association,* 731 F.2d 684, 690 (10th Cir.1984) (overruling *Dickerson* on that issue). The case was tried to a jury, and on October 28, 1983, a verdict was returned for the plaintiff against defendant Cindy Seeger, his immediate supervisor, and in favor of the defendants City Bank and Phil Miller. We granted plaintiff's motion to alter and amend the judgment, holding the Bank liable under the doctrine of *respondeat superior. Dickerson v. City Bank & Trust Co.,* No. 82–4112 (D.Kan., *unpublished,* 4/18/84). Defendant City Bank has filed a motion to alter and amend our decision on the *respondeat superior* issue. In addition, the parties have filed voluminous memoranda and exhibits in support of their respective positions on the attorney's fees issue.

We are not persuaded by City Bank's argument that our ruling of April 18, 1984, holding the bank liable, was in error. The jury could have reached no other conclusion on the *respondeat superior* issue had that question been presented to the jury in a clear manner. There was no evidence presented at trial that Seeger's actions were personal to her or that she had stepped aside from the bank's business. *Hollinger v. Stormont Hospital and Training School for Nurses,* 2 Kan. App.2d 302, 578 P.2d 1121 (1978); *Williams v. Community Drive-In Theatre, Inc.,* 214 Kan. 359, 520 P.2d 1296 (1974). City Bank, as a distinct entity, was presented on the verdict form only to reflect discrimination by employees, including, *but not limited to,* defendants Seeger and Miller. Perhaps the instructions should have directed that if the jury found against ei-

ther Seeger or Miller, then the bank would also be liable as a matter of law. This would reflect the general rule that "[a]n employer is liable under both Title VII and section 1981 'where the action complained of wat that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy.'" *EEOC v. Gaddis,* 733 F.2d 1373 (10th Cir.1984) [*quoting Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979)]. There is, of course, no requirement that the employer have knowledge of the discriminatory conduct. W. Prosser, *Handbook of the Law of Torts* 458–467 (4th ed. 1971); *Miller v. Bank of America,* 600 F.2d at 212. Therefore, City Bank's motion to alter and amend the judgment is denied.

We turn now to the plaintiff's application for attorney's fees. Unfortunately, litigation on attorney's fees under 42 U.S.C. § 1988, after a party has prevailed on the merits, has become a time consuming and complex issue unto itself. This case is no exception. Thus, we will examine the relevant case law and attempt to establish guidelines in an effort to aid the parties in this and future cases.

■ In two recent decisions, the Supreme Court has clarified the standards to be applied to requests for attorney's fees in civil rights cases. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson,* — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). *Cf. Pulliam v. Allen,* — U.S. —, —, n. 18, 104 S.Ct. 1970, 1979, n. 18, 80 L.Ed.2d 565 (Powell, J., dissenting). In *Hensley,* which was the first major pronouncement on attorney's fees since *Alyeska Pipe Line Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Court set out general guidelines for

district courts in determining the amount of attorney's fees. A reasonable fee should initially be calculated on the basis of "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." [1] *Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1939. Once an initial fee is determined, the court may then take into consideration other factors in adjusting the amount. These factors include the degree of success obtained by the prevailing party with respect to all the claims asserted, whether the hours were properly billable, and whether adequate billing records were kept by the party.[2] Further, the Court stated that a "[a] request for attorney's fees should not result in a second major litigation." *Id.* 103 S.Ct. at 1941. If the parties are unable to resolve the matter, the fee applicant bears the burden of establishing entitlement. In order to preserve its rights on appeal, however, the defendant has the burden to come forward with evidence indicating the unreasonableness of the fee requested. *Blum v. Stenson,* — U.S. at ——, 104 S.Ct. at 1545.

■ In *Blum v. Stenson,* the second attorney's fees case decided this term, the Court clarified some of the issues remaining after *Hensley.* Nonprofit legal service organizations were held to be entitled to compensation at the prevailing market rate. In addition, an upward adjustment or enhancement of attorney's fees is appropriate only in exceptional circumstances. In his concurrence, Justice Brennan voiced the opinion that the risk of nonpayment due to a contingent fee is one factor which may be considered in enhancing the amount of the award; however, the majority expressly reserved ruling on the question. *See Blum v. Stenson,* — U.S. at ——, 104 S.Ct. at 1550–51. Finally, the Court noted the admonition of *Hensley* that requests for at-

---

**1.** See our discussion of the Tenth Circuit's specific guidelines as to these two factors, *infra.*

**2.** Other factors commonly articulated are found in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and approved in *Battle v. Anderson,* 614 F.2d 251 (10th Cir.1980).

While these factors may be helpful, they do not themselves "conjure up a reasonable dollar figure in the mind of the district judge." *Copeland v. Marshall,* 641 F.2d 880, 890 (D.C.Cir.1980) (*en banc*); *see, also, Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir.1983).

torney's fees should not result in a second major lawsuit, and that "[t]he [district] court, with its intimate knowledge of the litigation, has a responsibility to encourage agreement." *Blum v. Stenson,* —— U.S. at ——, n. 19, 104 S.Ct. at 1550, n. 19.

Two recent Tenth Circuit cases have expounded upon the subject. *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983); *Cooper v. Singer,* 719 F.2d 1496 (10th Cir. 1983). In *Ramos,* the court examined the method of calculating the time and reasonable hourly rate to be considered by the district court. In computing time, attorneys for the parties must distinguish between "raw" time and "billable" time. *Ramos v. Lamm,* 713 F.2d at 553. *See, also, Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1939–40. The court must take into consideration the number of hours reported for each specific task. Research into background cases and other attempts generally aimed at providing familiarization with an area of law should not be billed to the adversary, but rather should be absorbed in the attorney's overhead. Similarly, duplication of services by attorneys working on the same case must be avoided. However, the use of more than one lawyer on a case does not require an automatic reduction or a presumption that services were duplicated.

The court should next consider the reasonable hourly rate. The general rule is that an attorney for a prevailing party should receive "what lawyers of comparable skill and experience, practicing in the area in which the litigation occurs, would charge for their time." *Ramos v. Lamm,* 713 F.2d at 555. Thus, the court must make a determination of the skill of each lawyer participating in the case, the attorney's experience in civil rights litigation, and the local hourly rate employed by members of the bar within the area where the court sits.

The effect of contingent fee agreements on attorney's fees awards was decided in

*Cooper v. Singer,* 719 F.2d 1496 (10th Cir. 1983) (*en banc*). The court held that if an award of attorney's fees under § 1988 is less than the amount owed to the attorney under the contingent fee agreement, then the lawyer must be limited to the § 1988 amount. However, if the award is greater than the contingency agreement, the attorney may keep the total amount awarded under § 1988. It was noted, however, that even under § 1988, a contingency bonus may be appropriate if the attorney will only be compensated if his client is the prevailing party. *Cooper v. Singer,* 719 F.2d at 1506, n. 14. As noted previously, the contingency bonus issue was expressly reserved in *Blum v. Stenson, supra.*

With these authorities in mind, we now turn to the merits of the attorney's fees application in the present case.

Plaintiff's petition for attorney's fees was filed on February 24, 1984. It contained an 11-page brief outlining what plaintiff considered to be relevant factors in support of his request for an award of $53,750.00 attorney's fees (plus a multiplier), expenses of $2,397.67, and costs. Further, plaintiff submitted 14 pages of computer-printed time slips documenting 430 hours, and other documents concerning the costs involved in the case. Plaintiff also attached an opinion of this court, in which Judge Rogers previously awarded attorney's fees to the Phelps firm. *Orr v. Kansas Public Employees Retirement System,* No. 78–4175 (D.Kan., *unpublished,* 2/8/84).

Defendants countered with a 29-page brief plus exhibits in opposition to plaintiff's request. In their response, defendants stated that "the total number of hours reasonably spent by Phelps, Chartered, on this case appears to defendants to be zero." This contention was apparently based on what the defendants felt were insufficient time records and other deficiencies in the petition.[3] Defendants assert that even if the plaintiff is entitled to attorney's fees, the fee award should be reduced

---

**3.** Some of the objections that defendants have with respect to the time records appear to be valid. However, while the court may consider

conclusory allegations of the insufficiency of plaintiff's time records, such insufficiency is not evidence of unreasonableness, *per se.* The de-

by two-thirds (in accordance with the typical American rule that plaintiff is only entitled to recover against the party prevailed against),[4] and reduced again by two-thirds to four-fifths under the *Hensley's* "successful claims" analysis, and again by one-half to three-fourths under the *Hensley* "comparison of relief obtained to relief requested" analysis.[5] Application of this formula to plaintiff's requested amount produces a range of between $887.00 to $2,986.00, approximately. Such a result, of course, would be patently inadequate.

■ Plaintiff has countered with a 23-page reply brief on the relevant law, and 11 appendices which include a series of letters sent between the parties,[6] time slips from another irrelevant case, and an affidavit from Gloria Wachter, a dance instructor in Wichita, concerning attorney's fees.[7] Finally, defendants have filed a "reply to plaintiff's reply," in which they again ask that no attorney's fees be awarded, and that in the event the court wishes to consider such an award, a full evidentiary hearing be held for presentation of the matter. Plaintiff then filed a motion to strike or for leave to file a response to defendant's reply. Such is the state of the record at this point.

■ In light of the confused and protracted nature of this litigation on the at-

---

fects in the time records are not so serious as to render plaintiff without any right to compensation for attorney's fees. Such a contention is completely without merit. *See Johnson v. University College,* 706 F.2d 1205, 1207 (11th Cir. 1983); *Grendel's Den, Inc. v. Larkin,* 582 F.Supp. 1220 (D.Mass.1984).

The court recommends, as did Judge Rogers in *Orr v. Kansas Public Employees Retirement System,* No. 78-4175 (D.Kan., *unpublished,* 1984), that specific records be kept for each *individual* attorney, noting the time spent on a particular task. *See Ramos v. Lamm,* 713 F.2d at 553–555.

4. Defendants contend that because City Bank and Trust and Phil Miller were found not liable by the jury, the attorney's fees should be reduced by two-thirds. This contention loses significance in view of the court's ruling that, as a matter of law, the bank is also liable.

5. Defendants' reliance on this type of formula is misplaced. *Hensley* clearly rejected a mathematical formula approach, weighing the total issues sought to be litigated and the relief sought with the end result. *Hensley,* 461 U.S. at ——, 103 S.Ct. at 1940–41. We have previously indicated that the vindication of public policy will weigh heavily in our analysis of entitlement to attorney's fees. *Seymour v. Clemens & Green, Inc.,* No. 82-2237 (D.Kan., *unpublished,* 3/13/84). *See Ramos v. Lamm,* 713 F.2d at 557. Further, we would be reluctant to accept defendants' contention that the Title VII and 42 U.S.C. § 1981 claims were distinct and not based on a "common core of facts" and related legal theories. *Hensley,* 461 U.S. at ——, 103 S.Ct. at 1940. We deem defendants' view to be extremely restrictive and contrary to the public policy of extinguishing racial discrimination in the workplace. It would also be difficult to reduce an award based upon the holding in the Title VII claim. *See Smith v. Oral Roberts Evangelistic Association,* 731 F.2d 684 (10th Cir. 1984).

6. There is a dispute as to which party wrote the last letter urging settlement. Defendants deny receiving a letter that the Phelps firm allegedly sent. From an examination of the correspondence between the parties, it is apparent that defendants sought the time records for this case at an early stage in the "negotiations." We can discern no reason why, if plaintiff was serious about settling the issue, those time slips were not presented at that point. On the other hand, it appears defendants made no counteroffer to indicate their position. Once the parties became aware of the miscommunication, there apparently was no further attempt to negotiate settlement. These circumstances can only lead us to conclude that efforts to settle the attorney's fees question have been less than wholehearted and sincere.

7. The court is unable to comprehend why time slips from an unrelated and irrelevant case were submitted for this case. Nor can we divine what expertise a Wichita dance instructor has concerning reasonable attorney's fees in the Topeka area for civil rights litigation. *Cf. Ramos v. Lamm,* 713 F.2d at 555 (the fee rates of the local area should be applied). Choreographing the annual bar show in Wichita and being acquainted with the local attorneys is insufficient to establish the customary fees charged in either Wichita or Topeka.

Evidence presented in support of a party's position must be relevant, material and, if in the form of an affidavit, must comply with Rule 56(e) of the Federal Rules of Civil Procedure. Plaintiff may present affidavits of other members of the bar, documents relating to any fee agreement or any other relevant correspondence. Defendants may wish to present the number of hours that their counsel spent defending the case and their hourly rate. This type of evidence, unlike much of that submitted herein, would be of considerable aid to the court.

torney's fees issue, we deem it imperative that steps be taken to prevent similar occurrences in future cases. Because the court has a "responsibility to encourage agreement," *Blum v. Stenson,* —— U.S. at —— n. 19, 104 S.Ct. at 1550 n. 19, we must insist that the parties make a conscientious and sincere effort to resolve their present differences concerning this issue. Therefore, we announce the following guidelines in attorney's fees litigation under 42 U.S.C. § 1988:

(1) Within sixty (60) days after the entry of judgment on the merits by the court, the prevailing party must file with the court a motion for attorney's fees under 42 U.S.C. § 1988. Local Rule 25(c).

(2) The parties *shall* negotiate with one another in good faith, in an attempt to settle the issue of attorney's fees. The court may impose appropriate sanctions against any party that fails to negotiate in good faith.

(3) Upon request by the non-moving party, the prevailing party shall make available to the nonmoving party any time slips, records, or other documents that support the claim for attorney's fees.

(4) The court will not entertain a motion for attorney's fees under § 1988 unless, within twenty (20) days of the date of filing of the motion, counsel for the prevailing party files with the court a certificate indicating that said counsel has conferred in good faith with opposing counsel or made reasonable effort to so confer, regarding the request for attorney's fees, but that attempts to reach a settlement have failed. In the event that the prevailing party believes that the opposing party has failed to negotiate in good faith, he or she may, at the time of filing the certificate, file a motion for sanctions, supported by documentary evidence. At the time of filing the certificate, the prevailing party shall also file with the court copies of any time slips, records, or other documents that support the claim for attorney's fees. Copies of any documents not previously provided to opposing counsel shall be delivered to opposing counsel at this time.

(5) Within ten (10) days after the filing of the certificate, the nonmoving party shall file with the court a response, supported by evidence in the form of affidavits or other documents, indicating why the requested fee is unreasonable. In the event that the nonmoving party believes that the prevailing party has failed to negotiate in good faith, he or she may file a motion for sanctions, supported by documentary evidence.

(6) Within ten (10) days thereafter, the prevailing party may file with the court a reply, together with any additional evidence supporting the reasonableness of their requested fee and/or addressing the good faith of the parties in negotiations toward settlement.

(7) The court may then decide the motion for attorney's fees with or without a further hearing. The court may also consider the imposition of appropriate sanctions if it is determined that any party has failed to negotiate in good faith.

Although the court realizes that these guidelines may, in fact, increase the formality involved in resolving these issues, we believe that it will permit the attorney's fees question to be resolved in an orderly manner and with reasonable dispatch. We emphasize again that a party who does not make a sincere, good faith effort to settle the issue may be subject to sanctions. If an agreement is not reached, the court, in making its own determination of the hours reasonably expended and the reasonable hourly rate, has wide discretion and may also consider the good faith, or lack thereof, of the parties in attempting to negotiate a settlement. *See Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984); *Miles v. Sampson,* 675 F.2d 5 (1st Cir. 1982).

For the guidance of counsel, the court is of the opinion that this case does not warrant application of the multiplier factor. *Blum v. Stenson, supra.*

In sum, defendant City Bank's motion to alter and amend the judgment is denied. The parties are directed to take adequate steps to ensure that the attorney's fees guidelines set forth above have been complied with. Specifically, the parties should make serious attempts to settle the issue and should apprise the court of the state of the negotiations by following guidelines (4), (5) and (6), with respect to matters that have not already been furnished. The certificate should be filed with the court by July 25, 1984. Defendants will then have ten (10) days to respond.

IT IS SO ORDERED.