Betty D. COMMONS, Plaintiff,

v.

MONTGOMERY WARD &
COMPANY, Defendant.

Civ. A. No. 83-4119.

United States District Court,
D. Kansas.

July 30, 1985.

Fred W. Phelps, Sr., Fred W. Phelps, Jr., Phelps-Chartered, Topeka, Kan., for plaintiff.

Grant M. Glenn, Edward L. Bailey, Michael J. Grady, Cosgrove, Webb & Oman, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This Title VII, 42 U.S.C. § 1981, and Age Discrimination in Employment Act (ADEA) action was tried to a jury and the court from November 26 through November 29, 1984. The jury returned a verdict for plaintiff on the section 1981 claim and for defendant on the ADEA claim. We have considered all the evidence, memoranda, and proposed findings and conclusions submitted by the parties, and are now prepared to rule on various post-trial motions and the Title VII claim. We turn first to the Title VII claim.

Plaintiff is a white, 58-year-old American female. She was employed at the Montgomery Ward & Company (Montgomery Ward) store in Topeka, Kansas, from 1967

to 1983. For the 15 years prior to her termination, she was manager of the customer accomodation center (formerly called the credit department). In that capacity plaintiff supervised six to eight employees, some of whom were part-time.

During the early 1980's, Montgomery Ward was having financial difficulties. As a result, various merchandising techniques were changed, stores were closed, and several reorganizations took place, causing many employees to lose their jobs either through termination or attrition. Also, Montgomery Ward's corporate headquarters determined that a reduction in management personnel was needed to streamline the organization. This brought about a reduction in the number of retail sales managers in the Topeka store from nine to six. The relevant changes with regard to the instant case were that the catalog department and customer accommodations center were merged, and the new department leader was given the title of customer service manager.

On April 1, 1983, plaintiff was brought to the office of Jim Fleshman, the store manager, and advised that these departments would no longer exist independently. She was also advised that the customer service manager's position would be given to Terri Lewis.

Lewis was a 29-year-old black female who had been with Wards for six years. She had graduated from Central Missouri State University and obtained a Bachelor's Degree in Textiles and Clothing. Lewis was enrolled in Montgomery Wards' Retail Store Sales Manager's (RSSM) training program. She had little or no experience in either the credit or catalog areas and was familiar with them only slightly from her management training program four years earlier.

Plaintiff was told at the meeting that she had three options. She was offered the position of clerk in the customer services department, or the position of merchandise record clerk in a different department. Both of these positions would pay plaintiff approximately $3,000.00 less than what she was making at the time. If plaintiff took either position, she would also be required to stay in the customer accommodations department for a period of time in order to train Lewis. If she declined both of these offers, she was told the Company would have no choice but to terminate her. In fact, Grace Patterson, the store personnel manager, had already been requested by Fleshman to prepare plaintiff's severance papers. Plaintiff was told her decision had to be made that day. Thereupon, she refused the offers and was terminated the same day.

■ In order to make out a *prima facie* case of employment discrimination based on race, a plaintiff has the initial burden of showing:

(1) that plaintiff belonged to the protected class;

(2) that plaintiff applied and was qualified for the position;

(3) that plaintiff was rejected; and

(4) that after plaintiff's rejection, the position remained open.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Although this standard was developed for Title VII actions, it is also applicable in section 1981 cases. *See e.g. Elkassabany v. King Radio Corp.*, No. 79–4193 (D.Kan., *unpublished,* 8/17/83); *Hall v. Bio-Medical Application, Inc.*, 671 F.2d 300 (8th Cir.1982). The *McDonnell Douglas* test is not an inflexible standard, as the facts necessarily will vary in each case. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Once a plaintiff meets this initial burden a rebuttable presumption of unlawful discrimination is created. The Supreme Court has stated: "The *prima facie* case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *see Carlile v. South Routt School Dist. RE–3J*, 739 F.2d 1496 (10th Cir.1984).

To rebut the presumption of discrimination, the defendant must then come forward and show that the action taken was for a legitimate, nondiscriminatory reason. *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Carino v. University of Oklahoma Board of Regents,* 750 F.2d 815 (10th Cir.1984).

The legal standards to be applied when determining whether a plaintiff has made out a *prima facie* case of discrimination in a reverse discrimination context are unclear. Compare *Parker v. Baltimore & Ohio Railroad Co.,* 652 F.2d 1012 (D.C.Cir. 1981), with *Setser v. Novack Investment Co.,* 657 F.2d 962 (8th Cir.1981) (en banc), and *Johnson v. Transportation Agency, Santa Clara County,* 748 F.2d 1308 (9th Cir.1984). Much of this confusion has resulted from two Supreme Court cases which seem to dictate opposite results. In *McDonald v. Santa Fe Trail Transportation,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Court held that section 1981 prohibits discrimination against white persons on the basis of race. Only three years later the Court decided *United Steelworkers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), a Title VII action. There, the Court upheld voluntary affirmative action plans designed to promote minority employment. Other courts have since held that *Weber* also applies to section 1981 actions. *See Setser v. Novack Inv. Co.,* 657 F.2d at 966–67 (and cases cited therein). In light of these cases, several courts have sought to reconcile the decisions and develop a workable standard for application in reverse discrimination cases.

In *Parker v. Baltimore & Ohio Railroad Co.,* 652 F.2d 1012 (D.C.Cir.1981), the District of Columbia Circuit analyzed the question, and held that a majority plaintiff must show, as a part of his *prima facie* case, some "background circumstances [which] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Parker,* 652 F.2d at 1017. This would effectively eliminate the normal *McDonnell Douglas*

presumption. The court further observed that "[a] *prima facie* case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not to be based on the consideration of impermissible factors, [but] it defies common sense to suggest that the promotion of a black employee justifies an inference of prejudice against white coworkers in our present society." *Parker,* 652 F.2d at 1017 (citations omitted).

The Eighth Circuit examined the problem in greater depth in *Setser v. Novack Inv. Co.,* 657 F.2d 962 (8th Cir.1981) (en banc), and held that the *McDonnell Douglas* standard applied generally but that certain modifications were needed because "a race-conscious choice by reason of a remedial affirmative action plan is legitimate under Title VII or section 1981." *Id.* at 968. The court went on to state that the employer bears the burden of producing some evidence that its plan was in response to a conspicuous racial imbalance and that the plan is reasonably related to the intended remedial purpose. In response, the employee must then present evidence that the plan was unreasonable or irremedial. If the plan is found to be bona fide, judgment must be entered for the employer because "any other alleged reason for [plaintiff's] rejection would not be based on a race conscious choice and therefore would defeat his claim of racial discrimination under section 1981." *Id.* at 970 n. 9.

In *Johnson v. Transportation Agency, Santa Clara County,* 748 F.2d 1308 (9th Cir.1984), the Ninth Circuit followed the Eighth Circuit and held that the traditional *McDonnell Douglas* test applied. The Ninth Circuit made clear that the employer could produce evidence of its affirmative action plan as a nondiscriminatory reason for its employment decision. The court proceeded to analyze the employer's affirmative action plan and reversed the district court's finding that the employer had

not met its burden of showing a bona fide plan.[1]

■ We believe the view of the Eighth and Ninth Circuits is persuasive and should be followed in reverse discrimination cases. Majority plaintiffs should be able to rely on the *McDonnell Douglas-Burdine* presumption in order to test the validity of the defendant's affirmative action plan by requiring the defendant to put on evidence concerning the plan, its reasonableness and purposes. *See generally Winkes v. Brown University*, 747 F.2d 792, 799–800 (1st Cir. 1984) (Pettine, J., dissenting).

■ We now turn to the facts in the present case. Several incidents led plaintiff to believe that she was the victim of racial discrimination. Commons testified that she had attempted to enter the Company's Management Trainee Program (RSSM), but was told by a store manager that she was too old to enter the program and that it wouldn't hurt if she were black. Another witness was told by a store manager that plaintiff did not get the job because they had to make a place for Terri Lewis. The personnel department in the Topeka store was informed by the district that no white applicants would be interviewed because they were swamped with applications from whites. Employees were told the district office was only interested in black applicants. Further, both economic and personal pressures were exerted upon store managers to meet minority requirements. Supervisors were told to promote blacks over whites regardless of their qualifications. One assistant store manager was quoted as saying that the store managers had a quota to fill, and if they didn't, it would affect the bosses' bonus.

Other individuals were also treated in a manner that leads us to believe the defendant engaged in a pattern and practice of discrimination. Ina Johnston, a white female, was the cosmetics department manager for approximately 13 years. In 1981, she was demoted to sales clerk and replaced by Terri Lewis. Johnston, however, was instrumental in teaching Lewis about cosmetics and the cosmetics industry. One year later, Johnston was rated in her new position as sales clerk. Lewis, who was still her supervisor, gave her a good evaluation and recommended promotion. Fleshman signed the evaluation and it was presented to Johnston. Sometime later, however, Fleshman added a notation indicating that Johnston was not promotable to RSSM. This effectively blocked her being promoted to assistant [RSSM]. Fleshman further indicated that she was to be left in her present position. Johnston was never informed about these notations on her records.

There is little doubt that plaintiff was qualified for the new position. Fleshman, the store manager, testified that he thought plaintiff could do the newly-created job, but was not qualified to do anything beyond that level. All of the testimony was that her past evaluations had been very favorable and that management held her out as an example to other supervisors.

From the incidents related above, as well as other testimony at trial, plaintiff presented sufficient evidence to make out a *prima facie* case on the issue of race discrimination.[2]

■ Once plaintiff established her *prima facie* case, the burden of production

---

1. We note that a strong dissent (although the judge concurred in the result) indicated that an affirmative action plan should be viewed as an affirmative defense. The dissent points out that this would shift the burden of proving the bona fide nature of the plan to the employer who has all of the relevant information concerning the plan.

2. We could also find, from the facts of this case, that special circumstances existed which would justify the suspicion that Wards was that unusual employer who discriminates against the

majority. *See Lanphear v. Prokop*, 703 F.2d 1311 (D.C.Cir.1983) (holding that pressure from an employer's top management to increase the number of minorities and the fact that the employer was adopting an affirmative action plan are sufficient to show background circumstances). *But see Parker v. Baltimore & Ohio Railroad Co.*, 652 F.2d at 1017 n. 9 ("[W]e [do not] suggest that a lawful affirmative action program would in itself constitute suspicious circumstances sufficient to justify an inference of discriminatory intent under *McDonnell Douglas*.").

shifted to defendant to articulate some legitimate nondiscriminatory reason for the employee's rejection. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Johnson v. Transportation Agency, Santa Clara County, California,* 748 F.2d at 1310 n. 2 (9th Cir. 1984). Defendant proffered its evidence that the plaintiff was not as qualified as Lewis to handle the job. Defendants' contention throughout the case was that neither race nor age was a factor in choosing Lewis over plaintiff. Defendant introduced no evidence as to its affirmative action plan or that Lewis was promoted in accordance therewith. Although *plaintiff* pointed out that an affirmative action plan existed, that alone is not sufficient to justify the employment decision. *See Johnson,* 748 F.2d at 1317 (Wallace, J., dissenting). Defendant did not attempt to produce any evidence that the plan was a "response to a conspicuous ... imbalance in its work force" or that "its affirmative action plan is reasonably related to the plan's remedial purpose." *Setser v. Novack Investment Co.,* 657 F.2d at 968. It is the bona fide nature of the plan that separates the legitimate race conscious choices from those which are illegal.

We cannot permit the defendant to come forward now and raise its affirmative action plan as a defense. To do so would grant defendant an opportunity to "present a moving target or, as in this case, conceal the target altogether." *Lanphear v. Prokop,* 703 F.2d at 1316.

> [T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and *to frame the issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.*

*Lanphear v. Prokop,* 703 F.2d at 1316–17 (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981)). In this case, defendant has never attempted to justify its decision by the existing affirmative action plan. Were we to find that the affirmative action program was in fact the reason for the discrimination, we would be depriving plaintiff of the opportunity to show that the plan was overbroad or not related to its purpose. We believe that this is exactly the situation the Supreme Court in *Burdine* was trying to eliminate.

■ Plaintiff has proved by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination. Plaintiff did this by demonstrating her qualifications, exemplary work record, the fact that in other Wards stores the CSM manager was promoted from plaintiff's job or the catalog department and the treatment of other white and older individuals. *See Rich v. Martin Marietta Corporation,* 522 F.2d 333, 345 n. 8 (10th Cir. 1975). We find that plaintiff suffered discrimination on the basis of her race when she was not given the new job and instead was demoted. She is thus entitled to judgment on her Title VII claim.

To analyze defendant's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, we must look at the same factors already discussed.

The legal standards to be applied to these motions are clear. A motion for judgment notwithstanding the verdict requires that the evidence be viewed in the light most favorable to the party against whom the motion is made, and all inferences reasonably drawn from the evidence must also be resolved in favor of the party against whom the motion is made. See *Weeks v. Latter-Day Saints Hospital,* 418 F.2d 1035 (10th Cir.1969); *Gulf Ins. Co. v. Kolob Corp.,* 404 F.2d 115 (10th Cir.1968).

This court is not permitted to weigh the evidence presented [*Wilkin v. Sunbeam Corp.*, 377 F.2d 344 (10th Cir.1967)], nor to pass on the credibility of witnesses [*Bertot v. School District No. 1, Albany County, Wyoming*, 522 F.2d 1171 (10th Cir.1975)], nor to substitute its judgment of the facts for that of the jury [*Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir.1967)]. Only if no reasonable inferences sustain the position of the party against whom the motion is being made will the judgment notwithstanding the verdict be granted.

■ In ruling on a motion for new trial, the trial judge has broad discretion. *Scholz Homes, Inc. v. Wallace*, 590 F.2d 860 (10th Cir.1979). He has the obligation or duty to ensure that justice is done, and, when justice so requires, he has the authority to set aside the jury's verdict. *Seven Provinces Ins. Co., Ltd. v. Commerce & Industry Ins. Co.*, 65 F.R.D. 674 (W.D.Mo. 1975). He may do so when he believes the verdict to be against the weight of the evidence or when prejudicial error has entered the record. *Holmes v. Wack*, 464 F.2d 86 (10th Cir.1972). In considering a motion for new trial, the court is permitted to weigh the evidence and it may order a new trial even if there is evidence to support the jury's verdict. 11 Wright & Miller, *Federal Practice and Procedure*, § 2806.

■ Defendant contends the court erred in denying its request for an instruction that the jury could only find for the plaintiff if background circumstances supported the suspicion that the defendant is that unusual employer who discriminates against the majority. *See Parker v. Baltimore & Ohio Railroad Co.*, 652 F.2d at 1017. We believe the request was properly denied. Because the *McDonnell Douglas* test applies in a reverse discrimination action, defendant was required to propound any defenses based on its affirmative action plan at the time of trial. This the defendant did not do. Because the defendant made no effort to present a defense based on its affirmative action plan, the jury was left only with those defenses found in the typical discrimination action brought under section 1981. *See Setser v. Novack Inv. Co.*, 657 F.2d at 970 n. 9.

We are convinced that the motion for new trial and for judgment notwithstanding the verdict must be overruled. As we have previously outlined, the evidence supports the verdict of the jury. We are also satisfied that the proper standards for deciding the issues as they were presented were adequately set forth in the court's instructions.

■ We believe that the jury made an adequate award of damages to the plaintiff on her section 1981 claim. We decline, therefore, to award any back pay on plaintiff's Title VII claim. Plaintiff is entitled, however, either to reinstatement or to an award of front pay. The parties are directed to negotiate toward a settlement of this issue. If such a settlement is impossible, a hearing will be held to determine the matter.

■ Plaintiff is a prevailing party pursuant to 42 U.S.C. § 1988, and is therefore entitled to attorney's fees and costs. The attention of the parties is directed to *Dickerson v. City Bank & Trust Co.*, 590 F.Supp. 714 (D.Kan.1984), and counsel are directed to follow the procedures outlined in that case in order to facilitate the award of attorney's fees.

In sum, defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, is denied. Plaintiff's motion for judgment on the Title VII claim is granted. The clerk is directed to enter judgment in accordance with the jury verdict and this opinion.

IT IS SO ORDERED.