**Robert L. COLLINS, Plaintiff,**

v.

**SCHOOL DISTRICT OF KANSAS CITY, MISSOURI, Defendant.**

**No. 88–0655–CV–W–3.**

United States District Court, W.D. Missouri, W.D.

Jan. 4, 1990.

John J. Hager, Jolley, Walsh, Hager & Gordon, Kansas City, Mo., for plaintiff.

John R. Phillips, Toni Blackwood, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendant.

MEMORANDUM OPINION
AND ORDER

ELMO B. HUNTER, Senior District Judge.

Before the Court is defendant's motion for summary judgment. For the reasons discussed below, defendant's motion must be granted.

The School District of Kansas City, Missouri, defendant, ran a newspaper advertisement soliciting applicants for the position of Manager of Procurement, or Con-

tracts Manager, for Minority Business Enterprise/Women's Business Enterprise (MBE/WBE). The MBE/WBE programs are designed to ensure that qualified minority and women's businesses are able to compete for construction-related contracts arising from the school district's capital improvements project.

Plaintiff, a male, applied for the position after reading defendant's newspaper advertisement. An interview committee screened the applications and narrowed the applicant pool to six people, one of whom was plaintiff. The committee divided itself into two panels, both of which interviewed all six applicants. When the panels completed the interviews, they reconvened as a single committee and identified two of the six as the best candidates for the position. Both of the chosen candidates were female, so plaintiff was obviously not one of them. The superintendent of the defendant school district conducted the final interviews and recommended one of the two women for board approval. The Board approved the superintendent's choice in September, 1987.

After receiving notification that he had not been selected for the position, plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging that the decision not to hire him resulted from impermissible sexual discrimination. After receiving unfavorable agency review, plaintiff brought this suit alleging that the decision not to hire him was sex-based in violation of Title VII. Defendant has filed a motion for summary judgment on plaintiff's claims.

When determining whether summary judgment is proper, the Court is to view the facts "in the light most favorable to the opposing party." *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Nevertheless, Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 45. With respect to an issue on which the nonmoving party bears the burden of proof, the moving party need only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1987). In rebuttal, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 234 (quoting Fed.R.Civ.P. 45(e)). Whether a "genuine issue" exists depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### I.

Congress enacted Title VII as a means of assuring equality of employment opportunities and eliminating "those discriminatory practices and devices which have fostered racially stratified job environments...." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). Title VII prohibits employment practices that discriminate on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2. "Discriminatory preference for any group, minority or majority, is precisely ... what Congress has proscribed." *Griggs v. Duke Power Co.,* 401 U.S. 424, 429, 91 S.Ct. 849, 852, 28 L.Ed.2d 158 (1972). Subtle forms of unlawful discrimination present problems of proof in cases where the Title VII claimant has only circumstantial evidence of an employer's discriminatory practices. Thus, the Supreme Court has outlined the proper order and nature of proof in Title VII cases involving circumstantial evidence.

In *McDonnell Douglas* the Court established a framework that "serves to bring the litigants and the court expeditiously and fairly" to the ultimate question of whether the defendant intentionally discriminated against the plaintiff in violation of Title VII. *Texas Department of Com-*

*munity Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The prima facie case of racial discrimination requires the plaintiff to show:

    (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Of course, as the *McDonnell Douglas* Court noted, "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima face proof required from respondent is not necessarily applicable in every respect in differing factual situations." *Id.*, n. 13. Thus, for instance, the first element of the prima facie case has been modified in sexual discrimination cases so that a female plaintiff need only show that she is a woman. *Burdine*, 450 U.S. at 253, n. 6, 101 S.Ct. at 1094 n. 6.

The Court of Appeals for the District of Columbia has seized upon the Supreme Court's recognition that the prima facie case will vary in differing factual situations and has further modified the *McDonnell Douglas* prima facie case in so-called reverse discrimination actions. That court wrote:

    Membership in a socially disfavored group was the assumption on which the entire *McDonnell Douglas* analysis was predicated, for only in that context can it be stated as a general rule that the "light of common experience" would lead a factfinder to infer discriminatory motive from the unexplained hiring of an outsider rather than a group member. Whites are also a protected group under Title VII, but it defies common sense to suggest that the promotion of a black employee justifies an inference of prejudice against white co-workers in our present society.

    This court has allowed majority plaintiffs to rely on the *McDonnell Douglas* criteria to prove a prima facie case of intentionally disparate treatment when

background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.

*Parker v. Baltimore & O.R. Co.*, 652 F.2d 1012, 1017 (D.C.Cir.1981). Other courts have followed *Parker*. See, e.g., *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63 (6th Cir.1985); *Ustrak v. Fairman*, 781 F.2d 573 (7th Cir.), *cert. denied*, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986); *Livingston v. Roadway Express, Inc.*, 802 F.2d 1250 (10th Cir.1986); *Jones v. Slater Steels Corporation*, 660 F.Supp. 1570 (N.D.Ind.1987); *Jones v. Ohio Department of Mental Health*, 687 F.Supp. 1169 (S.D. Ohio 1987); *Bennett v. Texas Board of Pardons and Paroles*, 670 F.Supp. 196 (E.D.Tex.1987).

Research reveals no cases in this circuit following *Parker* or any similar rule. Indeed, in *Loeffler v. Carlin*, 780 F.2d 1365, 1369 (8th Cir.1985), *rev'd on other grounds sub nom. Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), a male plaintiff established his prima facie case of sexual discrimination without any showing of "background circumstances" that the defendant was that unusual employer who discriminates against the majority. The court upheld the district court's application of "the well-established standards set forth in *McDonnell Douglas Corp. v. Green* ... and *Texas Department of Community Affairs v. Burdine* ...." *Id.* The court required no special showing from the male plaintiff.

■ Other case law in this circuit suggests that *Parker* should not be followed. In *Setser v. Novack Investment Company*, 657 F.2d 962, 968 (8th Cir.), *cert. denied*, 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981), the plaintiff, a white employee, claimed that he was rejected for employment as the result of an illegal affirmative action plan. The Eighth Circuit wrote that "in a reverse discrimination case, *where the evidence shows that the plaintiff's treatment by the employer was pursuant to a bona fide affirmative action plan*, the satisfaction of the four part *McDonnell* test

will not necessarily show a prima facie violation." *Id.* (emphasis added). Implicit in the court's reasoning is that the *McDonnell Douglas* framework *does* apply in reverse discrimination cases and *does* show a prima facie violation *unless* the employer acted pursuant to a bona fide affirmative action plan. Moreover, the court did not modify the plaintiff's prima facie case in reverse discrimination cases where the employer asserts the defense that he has acted pursuant to an affirmative action plan; instead, the court modified the *employer's* required showing.[1] Thus, the case law in this circuit appears to be inconsistent with the *Parker* decision. For this reason and for the reasons stated below, this Court declines to follow the rule laid down in *Parker* and its progeny.

Not only is *Parker* inconsistent with Eighth Circuit case law, it is hard to reconcile with Supreme Court precedent. This Court disagrees that the underlying assumption of the *McDonnell Douglas* analysis was "membership in a socially disfavored group." *McDonnell Douglas* was, of course, a case involving allegations of race-based discrimination against a black man. Not surprisingly, the tone and language of the opinion addressed discrimination against minorities, specifically people of color. That does not dictate, however, that the *McDonnell Douglas* analysis should be substantially altered in cases involving allegations of unlawful discrimination against a member of a "socially favored group."

This Court understands *McDonnell Douglas* to be based on the assumption that proof of unlawful discrimination may be difficult in many Title VII cases. As the *Parker* court noted, the *McDonnell Douglas* framework was "not an arbitrary lightening of the plaintiff's burden." 652 F.2d at 1017. Neither, however, was it a "procedural embodiment of the recognition that our nation has not yet freed itself from a legacy of hostile discrimination," contrary to the *Parker* court's under-

standing. *Id.* The *McDonnell Douglas* framework was rather a procedural embodiment of the recognition that employment discrimination is difficult to prove with only circumstantial evidence. "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir. 1979)).

The *Parker* requirement that the non-minority plaintiff must show background circumstances indicating that the defendant "is that unusual employer who discriminates against the majority" completely undermines the goal of *McDonnell Douglas.* Indeed, under *Parker,* the other elements of the prima facie case are rendered meaningless because the requirement of showing the background circumstances is really a requirement that the plaintiff make an affirmative showing on the ultimate issue: Did the defendant unlawfully discriminate on the basis of race, color, religion, sex or national origin? Instead of expeditiously and fairly bringing the parties to the ultimate question, *Parker* shifts the entire burden back to the plaintiff in one fell swoop. *Parker* effectively eliminates the *McDonnell Douglas* framework from reverse discrimination cases. *See Commons v. Montgomery Ward & Co.,* 614 F.Supp. 443, 446 (D.C.Kan.1985) (*Parker's* required showing "would effectively eliminate the normal *McDonnell Douglas* presumption."). Surely the Supreme Court, by recognizing that proof in Title VII cases would vary, did not mean to provide the expeditious framework of *McDonnell Douglas* only to members of "socially disfavored groups" and deny it to those who are members of "socially favored groups."

Furthermore, there is no sound justification for such a radical alteration of the

---

1. The employer must first produce some evidence that its affirmative action plan was a response to a conspicuous racial imbalance in its work force and is remedial. Second, the employer must produce some evidence that its affirmative action plan is reasonably related to the plan's remedial purpose. *Setser,* 657 F.2d at 968.

*McDonnell Douglas* framework. The presumption of unlawful discrimination which arises from the establishment of the *McDonnell Douglas* prima facie case is not, of itself, a particularly logical or satisfactory inference of unlawful discrimination, even in traditional discrimination cases. The presumption is merely a procedural device intended to force the employer to come forward with a legitimate explanation for his conduct.

> The method suggested in McDonnell Douglas for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. A prima facie case under McDonnell Douglas raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.

*Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The inference is no stronger and no weaker depending on the sex or race of the plaintiff; if an employer cannot articulate a nonpretextual explanation for rejecting a qualified person, the reason likely was an impermissible one.

One other subtle but important side effect of the *Parker* requirement is that it converts every reverse discrimination case into a disparate treatment or disparate impact case. Under *Parker* it is not enough for the plaintiff to show only that the employer has impermissibly discriminated against him; the plaintiff carries the initial burden of showing that the employer is "that unusual employer who discriminates against the majority." *Parker,* 652 F.2d at 1017.

It is simply unconscionable for the courts to erect this arbitrary barrier which serves only to frustrate those who have legitimate Title VII claims. The *Parker* requirement only protects the "unusual employer who discriminates against the majority"; employers who do not make employment decisions based on impermissible factors are already adequately protected from frivolous claims by the *McDonnell Douglas–Burdine* framework. An employer need only *articulate*—not prove—a legitimate reason for the employment decision in order to rebut the prima facie case. It is the plaintiff who at all times bears the burden of proving the ultimate issue of discrimination.

Not only does the *Parker* requirement eviscerate *McDonnell Douglas* as applied in reverse discrimination cases, it will force the courts to take on the unseemly task of deciding which groups are "socially favored" and which are "socially disfavored."[2] This Court will not enter that briar patch unless and until the United States Supreme Court or the Eighth Circuit requires it. Therefore, any Title VII claimant before this Court can establish the first prong of his prima facie case by showing membership in a protected group. *See Coleman v. Missouri Pacific Railroad Company,* 622 F.2d 408, 410 (8th Cir.1980) ("In a Title VII case, the plaintiff must first demonstrate a prima facie case of discrimination based on one or more specified classifications, including gender.").

■ In the case before the Court, defendant has moved for summary judgment on the ground that plaintiff, a male, has not established a prima facie case of sexual discrimination because plaintiff has failed

---

**2.** *See Bishopp v. District of Columbia,* 788 F.2d 781, 786, n. 5 (D.C.Cir.1986) (where the court noted that "minority status for purposes of a prima facie case could have regional or local meaning").

to make a showing of the "background circumstances" required by *Parker*. The Court has held that the prima facie case does not require any such showing and therefore finds that because plaintiff is male and is claiming that defendant unlawfully discriminated against him on the basis of his sex, he has satisfied the first element of the *McDonnell Douglas* prima facie case of discrimination. Defendant does not dispute, at least for purposes of the present motion, that plaintiff has established the other elements of his prima facie case; thus, the Court further finds that plaintiff has established his *McDonnell Douglas* prima facie case of unlawful discrimination.

## II.

■ Alternatively, defendant has argued that it has rebutted the presumption raised by plaintiff's prima facie proof, that plaintiff is unable to prove that defendant's explanation is pretextual and that summary judgment should therefore be entered for defendant. Once a Title VII plaintiff has established his prima facie case of discrimination, a burden of production then shifts to the defendant. To carry this burden, defendant need only "articulate some legitimate, non-discriminatory reason" for the rejection. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

> The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.

*Id.* at 255, 101 S.Ct. at 1094. The plaintiff must then prove that the proffered reason is pretextual. Significantly, it is the plaintiff who at all times bears the burden of persuasion on the prima facie case and on the issue of pretext. *Id.* at 256, 101 S.Ct. at 1095. Thus, in response to a motion for summary judgment coupled with the defendant's articulation of a non-discriminatory explanation, the plaintiff must show that a genuine issue exists as to whether the explanation is pretextual.

■ The Court finds that the school district has proffered a legitimate, nondiscriminatory reason for not hiring plaintiff and for hiring Karen French instead. First, the school district maintains that Ms. French's work experience was superior to plaintiff's because she had immediately applicable job experience in administering MBE/WBE programs related to construction projects. Her resume (Exhibit 5 to Defendant's Suggestions in Support of Motion for Summary Judgment) reveals that she did, indeed, have MBE/WBE work experience. Plaintiff's resume (Exhibit 6 to Defendant's Suggestions) and deposition (Exhibit 1 to Defendant's Suggestions in Reply to Plaintiff's Suggestions in Opposition), on the other hand, reveal his prior employment involved administration and enforcement of federal civil rights laws, but do not reveal whether plaintiff has any experience in the administration of MBE/WBE programs.

Moreover, defendant has produced affidavits of those who interviewed plaintiff, and those affidavits indicate that plaintiff performed poorly in his interview, while Ms. French performed well. Plaintiff did not respond adequately to questions addressed to him and left his interviewers with doubts that he could personally perform the tasks necessary for the position. *See* Affidavits of Jerry Jaramillo, Willone Eubanks, Ruth Alderson and Jarie Midgett (Exhibits 7, 12, 13 and 14 to Defendant's Suggestions in Support). Plaintiff's own resume lends credence to the affiants' statements: his resume reveals a lack of attention to detail and a tendency towards verbosity. *See* Resume of Robert Collins (Exhibit 6 to Defendant's Suggestions).

To prove illegal discrimination, plaintiff has relied heavily on the advertisement placed by defendants which stated that the position required a bachelor's degree in Business, Construction Science, Architecture, or a related field. Karen French, has an undergraduate degree in English and Journalism, while plaintiff has the required

undergraduate degree in Business. Ms. French, however, had experience in administering the very kinds of programs she would be required to administer in defendant's employ. *See* Resume of Karen French (Exhibit 5 to Defendant's Suggestions). Clearly, defendant has proffered a cogent, credible and legitimate explanation for selecting Ms. French over plaintiff and has thereby rebutted plaintiff's prima facie case of discrimination.

Plaintiff's response to defendants' explanation is, "The School District has failed to articulate a non-discriminatory reason for its hiring decision in this matter." Suggestions in Opposition to Defendant's Motion for Summary Judgment at 4. In response to the affidavits of the interviewers, plaintiff states, "These affidavits contain conclusions and not specific facts in such detail or particularity to establish the reasons why Mr. Collins was not selected." Plaintiff's Reply to Defendant's Additional Suggestions at 5. The Court disagrees. The school district has explained that it hired Ms. French because she had the best and most relevant work experience among the applicants. Plaintiff, however, has failed to offer any rebuttal evidence showing that he has any MBE/WBE work experience. In response to a motion for summary judgment it is plaintiff's burden to show that there is a genuine issue of fact with regard to whether defendant's explanation is pretextual. Plaintiff has failed even to explain—much less point to evidence—why defendant's explanation is not worthy of credence. The evidence here is so clearly one-sided that defendant must prevail as a matter of law.

In the first paragraph of Plaintiff's Reply to Defendant's Additional Suggestions, plaintiff acknowledges that the *McDonnell Douglas* framework applies to this case. However, the rest of Plaintiff's Reply rambles on without any regard for that framework. Plaintiff has not attempted to shoulder his burden by showing that there is a material issue of genuine fact with respect to the issue of pretext. Indeed, plaintiff argues as though there is direct proof of sex discrimination in this case. Plaintiff also alludes to favoritism shown to Ms.

French in the hiring process. Plaintiff states that Ms. French had an "inside track" with the school board. Plaintiff's Reply to Defendant's Additional Suggestions at 3. No relevant evidence, however, was offered in support of that statement. Furthermore, even if there were evidence that Ms. French had an "inside track," that alone would not be probative of sexual discrimination. The plaintiff, who bears the burden of proving that defendant's proffered reason is pretextual, has failed to point to the slightest evidence of pretext. The Court finds that plaintiff has failed to establish the existence of a genuine issue of fact regarding the credibility of defendant's explanation for not hiring plaintiff.

Therefore, it is hereby ORDERED that defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.