Carlos GONZALEZ, Individually and in His Official Capacity as Airport Director of the Municipal Airport of the City of Laredo, and the City of Laredo, Appellants,

v.

Jose A. GUTIERREZ, d/b/a G & E Cabinet, Inc., and f/d/b/a G & E Furniture Outlet, Appellee.

No. 04–83–00414–CV.

Court of Appeals of Texas, San Antonio.

April 17, 1985.

Anthony C. McGettrick, Laredo, Leo D. Figueroa, Richard C. Danysh, San Antonio, for appellants.

Julio Garcia, Dist. Atty's. Office, Laredo, for appellee.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

BUTTS, Justice.

This is an action for tortious interference with plaintiff's right to do business with the City of Laredo. Plaintiff, Jose A. Gutierrez, sued the director of the Laredo International Airport, Carlos Gonzalez, in-

dividually and in his official capacity, and the mayor of Laredo, in his official capacity. The jury found against Gonzalez, but no special issues spoke to the mayor's liability, and the judgment fails to mention the mayor. Instead, the judgment finds the City to be liable and awards damages against Gonzalez, individually, and in his official capacity, and the City, both jointly and severally. Gonzalez and the City appeal.

In August, 1978, Gutierrez leased building 1308 at the Laredo International Airport from the City. He operated a cabinet making business in the building located inside the flight line. The record discloses that the City owns and manages the Airport subject to the jurisdiction and authority of the Federal Aviation Administration. The airport director administers the 1,575 acre airport for the City, and his duties include administering its leases (115 to 131 in number). The airport committee is the policy-making board and consists of several Laredo citizens, including the mayor. A leasing officer, under the airport director's supervision, negotiates airport leases. The proposals are submitted to the committee with the director's recommendations. The committee acts on the proposals. If the committee approves the leases, these are submitted to the City Council, which must officially approve them. The airport committee and the City Council, following similar procedures, must approve all specifications and bids for the sale of airport property.

In February, 1980, Gonzalez became airport director upon his retirement from military service as a colonel. He and plaintiff Gutierrez have been married to sisters for many years. In February, 1980, a family dispute (the sisters') erupted and some of the members filed suit in county court, the wives of the plaintiff and defendant being on opposite sides. The evidence is plain that the family's divisive feelings are acrid and malignant.

In early 1980 Gutierrez leased building 852, and Gonzalez recused himself from negotiations and recommendations. There

was testimony that the customary yearly increase in the airport leases had been inadvertently omitted from the building 1308 lease. The increase is based on the federal Consumer Price Index. When Gutierrez sought to renew his lease on that building, the monthly rent was increased, based on the CPI, from $1,400.00 to $1,718.00 to begin October, 1980. Gutierrez failed to pay the rent in October and November. As director, Gonzalez requested payment by letter. Gutierrez replied that the past due rent would be paid if a drainage problem in the area of the building were corrected by the airport. Gutierrez followed this by paying the sum of $1,400.00 on the arrearage. Gonzalez recommended to the committee the lease be canceled. The drainage problem was corrected on December 31, 1980. On January 19, 1980, Gutierrez gave notice he would vacate building 1308 on or before April 5, 1981, and that he would take care of rents owed. A letter, dated February 10, 1981, stating that the city attorney's office would be notified of delinquencies was sent. Gutierrez paid $2,800.00 for the months of November and December (the drainage problem not being corrected until then). He said his January, 1981, payment would be paid by March 5th when he would vacate the building; further he would apply his deposit of $1,400.00 to the February payment. Payments were made, and he vacated the building on March 3rd.

Gutierrez' lease on building 852 terminated on March 31, 1983. There were disputes over the leased premises (who provided maintenance for the outside area and rental overcharge). The City refunded certain overcharges wrongfully made but applied some of the amount to charges due under the lease. Since the lease provided for the lessee to maintain the outside area of building 852, the City offered to supply maintenance services for a fee. The lease on the building was not renewed.

In addition, Gutierrez alleged that Gonzalez prevented him from leasing property along with other parties and, instead, leased the premises to another for a lower rent than he would have been willing to pay. The evidence showed that four persons, including Gutierrez, offered to lease the defunct restaurant at the airport, but Gonzalez would not approve him. No evidence was offered by Gutierrez to show that he was actually refused the lease by the airport committee, or that he had pursued the matter further with that committee and the City Council.

Another allegation was that Gonzalez, with malicious intent, refused to accept Gutierrez' bids when his bids on property at auctions were the highest bids. The evidence shows that the airport from time to time auctioned off properties. Gonzalez purchased some air conditioners and other materials. We find no evidence to support the noted allegation. The record shows that a bid which Gutierrez submitted for dismantling a building, although it was the highest bid, was refused by the airport committee because it was too low to adequately perform the job. New bids were required, and this time his brother-in-law (Saenz) submitted the winning bid. Gutierrez did not obtain the job. He alleges that Gonzalez acted with malice in favoring the brother-in-law in other instances also.

It is the contention of Gutierrez that Gonzalez prevented him from participating in the profit-making activity because he was prevented from bidding and acquiring new leases and continuing his business interests at the airport.

It is important to set out the following trial court findings, made at the behest of Gutierrez, which are included in the judgment. We summarize:

1. That Gonzalez was employed by the City as airport director and was, therefore, an officer, agent and/or employee of the City.

2. That he represented the city in all of the business transactions between February 1, 1980, and March 31, 1983.

3. That he was at all times acting within the scope of his employment.

4. That the business venture of the City, rental of warehouse space, ne-

gotiation of leases on the warehouses, auctioning and selling properties is a proprietary function of the City.

5. The issue on which the same ten jurors did not vote was not a critical or crucial one.

We begin with the premise, which plaintiff cannot dispute, that Gonzalez was an employee or agent of the City and that he was at all times pertinent to this suit acting within the scope of his employment.

## AGENT/EMPLOYEE'S LIABILITY

Gonzalez argues in point of error six that an agent is not liable for interference with business relations or contracts between the agent's principal and third parties. Based on this, he argues, the trial court should have granted his motion for instructed verdict.

■ An action will lie against a third party who tortiously interferes with another's contract. Texas is in accord with that view. *Terry v. Zachry*, 272 S.W.2d 157, 159 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.).

■ An action will not lie, however, under the statement of the rule, for every interference. Exempted from the rule is one who does so in the bona fide exercise of his own rights or when he possesses an equal or superior interest to that of the plaintiff in the subject matter. Conduct in that instance is justified. In the case of a corporation the action of an officer to prevent payment to a former contractee, even though the debt was later found to be due, was justified because,

Were the rule otherwise, an officer of a corporation would induce a corporate officer to resist a claim at the risk of invoking a personal action unless the corporation was absolutely sure. A wilful refusal to pay an unliquidated claim is not the basis for a separate and independent suit against the corporate officers who induced the action.

*Id.* at 159–60. Continuing, the court then distinguished the situation when the suit is against *third party strangers* and not against corporate officers. The court quoted from the English authority, *Said v. Butt*, L.R. 3 K.B. 497:

But the servant who causes a breach of his master's contract with a third person seems to stand in a wholly different position. He is not a stranger. He is the alter ego of his master. His acts are in law the acts of his employer. In such a case it is the master himself, by his agent breaking the contract he has made, and in my view an action against the agent under the *Lumley v. Gye* principle [third party stranger enticing away one under contract of service] must therefore fail, just as it would fail if brought against the master himself for wrongfully procuring a breach of his own contract.

\*   \*   \*   \*   \*   \*

In the present case Gonzalez was the employee and agent of the City, acting within the scope of his employment. He was not a third party stranger. Texas recognizes a cause of action whether the tortious interference is with business relations or with contractual relations. *See Raymond v. Yarrington*, 96 Tex. 443, 73 S.W. 800, 802 (1903). The same rule applies in either. *See, e.g., Southwestern States Oil & Gas Co. v. Sovereign Resources, Inc.*, 365 S.W.2d 417 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.); *Carlson Machine Tools, Inc. v. American Tool, Inc.*, 678 F.2d 1253 (5th Cir.1982).

There has been no showing that Gonzalez' actions went beyond his authority as airport director. It was shown, moreover, that the airport director was by no means the final arbiter in the matters of airport business. Over and above him was the airport committee, which was not obliged to accept his recommendations, and beyond the committee was the City Council, the final decision-maker.

■ While there may be some doubt whether Gutierrez proved there was interference with his business relationship with the City, we find no need to address lack of proof. Because Gonzalez was the employee (agent) of the City, we hold the action

against Gonzalez for tortious interference must fail and sustain the point.

## THE JUDGMENT AGAINST THE CITY

■ In point of error one it is argued that the judgment was improperly entered against the City of Laredo because it was not made a party to the suit. The City was neither designated as a party to the suit, nor was it served with process. The only defendants named as parties were Carlos Gonzalez, individually and as airport director, and Aldo Tatangelo, in his official capacity as mayor. Process was served upon them but not the City. It is axiomatic that a judgment rendered against a defendant without citation or service upon him, or appearance by him, is a nullity. *State Mortgage Corp. v. Traylor*, 120 Tex. 148, 36 S.W.2d 440, 441 (1931); *Levy v. Roper*, 113 Tex. 356, 256 S.W. 251, 252 (1923).

■ Here it is uncontroverted that the City was not served with process. In pretrial argument, by special exception, it was pointed out to the court that the mayor was served in his official capacity only, and no acts on his part had been alleged. Although the caption names him a defendant, the adjudicatory portion of the judgment does not mention him (nor does any part of the judgment). In pertinent part it states:

> It is therefore, ORDERED, ADJUDGED AND DECREED that the plaintiff ... do have and recover of the Defendants, Carlos Gonzalez, individually and in his official capacity as Airport Director of the Municipal [sic] Airport of the City of Laredo, and from [sic] the City of Laredo, both liable jointly and/or severally to the plaintiff....

It has been held that a county cannot be made a party to a suit by naming members of the county commissioners' court, individually and in their official capacities. *Childress County v. Sachse*, 310 S.W.2d 414, 418 (Tex.Civ.App.—Amarillo 1958), *aff'd*, 158 Tex. 371, 312 S.W.2d 380. The same reasoning applies to the City, which is a separate legal entity.

■ Appellee also contends that since the city attorney of Laredo represented the director of the airport in his official capacity, and the mayor in his official capacity, the attorney likewise appeared as the legal representative of the City. He argues the City is therefore bound. We do not agree. As stated by the court in *Day v. State*, 489 S.W.2d 368, 372 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.), an attorney may appear for one or more of his clients while at the same time not appearing for others who were not cited. At no time did the city attorney indicate that the City was making an appearance. TEX.R.CIV.P. 120. In the present case the record clearly shows the City was not served with process and did not make an appearance. We sustain point of error one. The judgment against the City of Laredo is vacated.

## LOSS OF PROFITS

■ Point of error seven is that the evidence of loss of profits is insufficient, both factually and legally, to support the verdict of $65,000.00. We sustain this point and hold the evidence is legally insufficient. Only Gutierrez testified concerning loss of profits. He was asked if he knew how much money he had lost as a result of the problems he had with Mr. Gonzalez from his business. He replied, "About $132,-000.00." He was asked what he based that figure on. His reply was, "My I–R–S reports." His income tax reports for the years 1978, 1979, 1980, and 1981 were admitted into evidence. During cross-examination he said, in addition to the IRS reports, he arrived at that figure by "my computing the sales, bank statements.... By checking the amount of sales, the amount of payroll, the amount of materials, all in a business like that—" He agreed his conclusion was based on data that he gave to his accountant. The city attorney asked him to describe how he arrived at the figure, not merely stating the sources that provided the data. He stated he figured he lost money in 1979 by comparing his tax reports for 1978 and 1979. He said the business lost $7,000.00 in 1979 and "about $45,000.00 or $65,000.00, whatever it was,"

in 1980. (Gonzalez assumed his duties in February, 1980).

■■ In an action for interference with the business relations of another, the plaintiff may recover such damages sustained by him as are a natural and proximate consequence of the interference. Where the interference involves the acceptance by one party of salable items intended for his competitor, there may be a recovery for loss of profits. Where the result of the interference is to put the plaintiff out of business it has been said that his damages are the difference between the value of his business in the absence of the interference and the amount realized by liquidation. 45 Am.Jur.2d *Interference* § 58 (1969). Further, one who is liable to another for interference with a contract or prospective contractual relation is liable for damages for (a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; (c) emotional distress or actual harm to reputation if they are reasonably to be expected to result from the interference. RESTATEMENT (SECOND) OF TORTS § 774A (1979).

■ In this case there was no proof that, absent the alleged interference, the plaintiff would have been awarded a specific contract, bid, or lease. Or that his net earnings would have been a certain amount. Or, as a result, what his specific pecuniary losses were. Business records may be introduced to show a business' decreased profitability based upon objective facts, figures, and data, but this is not shown when based upon the subjective opinion of the interested party. *See White v. Southwestern Bell Telephone Co., Inc.*, 651 S.W.2d 260, 262 (Tex.1983); *Village Square, Ltd. v. Barton*, 660 S.W.2d 556, 560 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). We find the evidence to be legally insufficient to support the verdict of $65,000.00 for lost profits. The point of error is sustained.

## THE SAME TEN JURORS

The second point of error is that the verdict was defective because the same ten jurors did not concur on all issues. TEX.R. CIV.P. 292. · At the request of defendants' counsel the jury was polled. After the jury was polled, and before it was discharged, counsel asked whether there was a conflict in the answers, and the court replied, "That will be later, counsel. I am not saying yes or no." Whereupon, the trial court accepted the verdict and discharged the jury.

The same ten jurors answered affirmatively to nine and one-half issues. Special issue eight had two sections, section A and section B. The special issues were conditional. Juror Rodriguez answered affirmatively all issues finding liability against the defendants. But Rodriguez answered negatively section B of issue eight, which inquired as to the amount of damages for physical pain and suffering and mental pain and suffering. Two of the twelve jurors answered negatively all issues of liability against the defendants, but those same two, Howard and Tijerina, answered affirmatively all the damages issues, including special issue eight, section B. The result is that only nine of the jurors who found liability also found damages in special issue eight, section B. Notwithstanding, the sum of $50,000.00 was awarded for physical and mental pain and suffering. Howard and Tijerina did not sign the verdict. The majority ten jurors did. TEX.R. CIV.P. 292.

■ The defendants in a motion for mistrial, before final judgment was entered, brought this to the attention of the trial court. We agree that the requirements of Rule 292 have not been met as to special issue eight, section B. We hold there was neither a unanimous verdict on that issue, nor was there a finding by the "same ten jurors" as required by the rule. *See* TEX.R.CIV.P. 292, 293, 294. Prior to discharge of the jury, a trial court may retire the jury for further deliberations when there is a conflict or, in a situation such as presented here, when the jury is polled. We agree with the statement of

the court in *McCauley v. Charter Oak Fire Insurance Co.*, 660 S.W.2d 863, 865 (Tex.App.—Tyler 1983, writ ref'd n.r.e.).

The rule [Rule 292] requires that the same ten jurors answer all of the issues, and to allow otherwise would completely ignore the clear mandate of the rule. An examination of *State Highway Department v. Pinner*, 531 S.W.2d 851 (Tex.Civ. App.—Beaumont 1975, no writ), supports this court's analysis. In that case, the issue inquired whether the plaintiff's failure to stop his vehicle was the sole cause of the collision. One juror had previously voted (negatively) against liability of the defendant. He then voted affirmatively to the issue that plaintiff's failure to stop was the sole cause of the collision. This was *consistent* with his votes throughout. However, he changed his vote to a negative one (the plaintiff did not fail to stop) in order "to get the jury out" [of deliberation], "I vote to make it ten."

The *Pinner* court wrote:

The rule clearly requires that the same ten jurors answer *all* of the issues. [Citations omitted.] However, we conclude that as long as the same ten jurors voted for enough issues in the charge from which a judgment can be written, no reversible error is presented. This issue was unnecessary for appellee to recover. It could have been important to appellant only if ten jurors had agreed that Pinner's failure to stop was the sole cause of the collision. Therefore, the error is harmless.

*Id.* at 857–58. The error was clearly harmless in the *Pinner* case. The same cannot be said in the present case. The damage issue was a material and crucial one.

Because of our disposition of the case, we do not here determine whether that answer should have been disregarded by the court and a judgment entered if the remaining answers supported a judgment, or whether this material issue's answer by less than the same ten jurors would have warranted granting a mistrial. In any event, the argument that the answer to special issue eight, section B must fall is sustained.

Discussion of the remaining points of error is not necessary to our decision. The judgment is reversed and judgment is here rendered that plaintiff, Jose A. Gutierrez, take nothing.