**James Bernard BENNETT, Plaintiff,**

v.

**The TEXAS BOARD OF PARDONS AND PAROLES, Defendant.**

**Civ. A. No. TY–84–497–CA.**

United States District Court,
E.D. Texas,
Tyler Division.

July 28, 1987.

Harry H. Walsh, III, Malone, Walsh & Wright, Huntsville, Tex., for plaintiff.

Robert Ozer, Sedora Jefferson, Asst. Attys. Gen., Austin, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JUSTICE, Chief Judge.

On June 18, 1987, the above-entitled and numbered civil action came on for trial. Having heard the evidence presented, and having duly considered all testimony, exhibits, and arguments of counsel, the court now enters these findings of fact and conclusions of law in conformity with Fed.R. Civ.P. 52(a).

### I. Jurisdiction

This court has jurisdiction of this action under Title VII, 42 U.S.C. § 2000e et seq., 28 U.S.C. § 1343, and 28 U.S.C. § 2201 and 2202. Plaintiff James Bernard Bennett ("Bennett"), at the time of filing this lawsuit, was a citizen of Texas. Defendant, the Texas Board of Pardons and Paroles ("the parole agency"), is an agency of the State of Texas.

### II. Findings of Fact

1. Bennett is a white male. He was hired by the parole agency in September of 1979, and held such employment continuously until his voluntary resignation, which occurred on February 14, 1987. Bennett worked in the Palestine, Texas, office.

2. In January of 1984, the parole agency became aware that the position of Director of Board and Commissioner Services (Director) would become vacant the next month. The members of the Board of the parole agency select the person to hold this position.

3. On January 17, 1984, the Board members voted and agreed upon the job description for the position of Director.

4. The job description and notice of vacancy was posted on or about January 18, 1984. The general qualifications listed in the job description were graduation from an approved four-year college with major course work in criminal justice or related fields, and three years of employment in the parole agency. Possession of a master's degree was a "preferred" qualification, the sole attribute so denominated.

5. Plaintiff possessed both a bachelor's and master's degree in the appropriate fields.

6. Thirty-four persons, including Bennett, applied for the position at issue. Of these, thirty-one satisfied the minimum qualifications, including Bennett.

7. The Board members individually screened the written applications of all thirty-one persons meeting minimum qualifications. Each Board member then selected one applicant to be personally interviewed by the members of the Board. Bennett did not survive this first level of the selection process, as no Board member chose him to be interviewed.

8. The six selected interviewees were Hugh Dismukes, a white male; Ray Selvera, an Hispanic male; Judy Telecky, a Filipino female; Daniel Guerra, an Hispanic male; Susan Leinweber, a white female; and Bennie Young, a black male.

9. Of the six interviewees, only Dismukes and Young possessed master's degrees.

10. On February 9, 1984, during its regularly scheduled meeting, the Board members interviewed each of the six candidates. Following preliminary voting, two applicants, Hugh Dismukes and Daniel Guerra, emerged as front-runners. Eventually, Guerra was selected by majority vote. Guerra did not have a master's degree.

11. The position of Director of Board and Commissioner Services (subsequently renamed Family Information Coordinator) is unique. The position does not frequently become vacant, which makes the selection process highly competitive.

12. The person holding the position serves as a liason between the agency and the general public. Much of the job is devoted to explaining to inmate families the status of a prisoner's parole, and many of these families speak Spanish exclusively.

13. The selectee, Dan Guerra, is bilingual. Two Board members, Ruben Torres and Ed Pfeiffer, testified that Guerra's second language was an important asset given the nature of the job.

14. The evidence shows that the parole agency did not discriminate against white males in the job selection, and did not discriminate against plaintiff in particular. The first level of the selection process resulted in a pool of interviewees which included white applicants. Moreover, in the final stages of the process, the Board members narrowed their choice to two applicants, one of whom was a white male.

15. The evidence shows that defendant had not "pre-selected" an Hispanic before the selection process ensued, as Bennett claims. Both Torres and Pfeiffer specifically denied this accusation, and there is no other evidence that would lead to the conclusion that the selection process was a sham. Plaintiff's allegations that certain parole agency employees (non-Board members) had informed him of an Hispanic's pre-selection is of insignificant weight, since the testimony supporting his assertions was heresay, the alleged informants had no input with respect to the selection process.

### III. Conclusions of Law

1. The plaintiff bears the burden of proving by a preponderance of the evidence a prima facie case of race discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

2. In order to establish a *prima facie* case, in the context of a failure to promote, the plaintiff must show: (1) that he belongs to a protected group, (2) that he was qualified for and applies for selection, (3) that he was considered for and denied the selection, and (4) that a similarly-qualified employee from outside the plaintiff's protected group was selected at the time that plaintiff was rejected. *Johnson v. Brock*, 810 F.2d 219, 223 (D.C.Cir.1987); *Bundy v. Jackson*, 641 F.2d 934, 957 (D.C. Cir.1981).

3. To establish the first element of the *prima facie* case (membership in a protected class), the white plaintiff cannot merely state his race; he must show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C.Cir.1983).

4. Courts examining "background circumstances" have found that evidence

showing irregular acts of favoritism towards minority employees, racial disproportionality in job selection and promotions, and pressure within an agency to increase the percentage of minority employees will support a suspicion that an employer discriminates against majority employees. *See id.*

5. The fact that the persons responsible for making the selections or promotions are members of minority groups is, by itself, insufficient to raise the suspicion that the defendant discriminates against white employees. *Bishopp v. District of Columbia,* 788 F.2d 781, 787 n. 7 (D.C.Cir.1986) (citing *Plummer v. Bolger,* 559 F.Supp. 324, 329 (D.D.C.), *aff'd,* 721 F.2d 1424 (D.C.Cir.1983)).

6. Bennett has failed to show circumstances from which a proclivity to discriminate can be inferred so as to satisfy the first element of the *prima facie* case.

7. Even if it were conceded that Bennett established a *prima facie* case, the defendant has articulated legitimate, non-discriminatory reasons for not selecting him, by introducing evidence clearly setting forth the reasons for the employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

8. It was not necessary that the defendant prove that it was actually motivated by the reasons articulated. It is enough that it presented evidence raising "a genuine issue of fact at to whether [it] discriminated against the plaintiff" and, having carried "this burden of production, the presumption raised by the *prima facie* case [was] rebutted." *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 254-55, 101 S.Ct. at 1094-95.

9. Further, Bennett failed to show that defendant's legitimate, non-discriminatory reasons were pretextual, as required by *McDonnell Douglas Corp. v. Green,* 411 U.S. at 804, 93 S.Ct. at 1825.

10. In sum, Bennett failed to meet his overall burden of proof and failed to prevail on the basic factual inquiry in a disparate treatment case; that is, he failed to show that defendant acted with discriminatory motive in denying Bennett's application for promotion. *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Merrill v. Southern Methodist University,* 806 F.2d 600, 605 (5th Cir. 1986).