**Michael W. ULRICH, Plaintiff,**

v.

**EXXON COMPANY, U.S.A., A DIVISION OF EXXON CORPORATION, and James Lawley, Defendants.**

**Civ. A. No. H–92–1119.**

United States District Court, S.D. Texas, Houston Division.

June 4, 1993.

David T. Lopez, David T. Lopez & Associates, Houston, TX, for plaintiff.

Douglas B. Neagli, Exxon Co. USA, Houston, TX, for defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendants Exxon Company, U.S.A. ("Exxon") and James Lawley's ("Lawley") motion for summary judgment (Docket Entry #13). Defendants seek summary judgment on Plaintiff Michael W. Ulrich's ("Ulrich") claims of employment discrimination, intentional infliction of emotional distress, and tortious interference with beneficial relationship.

Jurisdiction in this matter is proper under 28 U.S.C. §§ 1331 and 1343. The parties consented to have a United States Magistrate Judge conduct all further proceedings in this case, including the trial and entry of judgment, pursuant to 28 U.S.C. § 636(c). The case was referred to the undersigned magistrate judge.

After review of the pending motion, the submissions, the pleadings, and the applicable law, this court finds that defendants' motion for summary judgment should be granted.

### I. Background.

Ulrich, a white male employee of Exxon, instituted this action on April 10, 1992, alleging that defendants have discriminated against him in employment on the basis of his race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981 or § 1981"). He also contends that defendants, specifically Lawley, have intentionally inflicted emotional distress upon him and tortiously interfered with his beneficial relationship

with Exxon. Lawley served as Ulrich's second level supervisor from 1983 through 1992, except for a one-year period from February 1987 to February 1988, when Ulrich was assigned to a special project.

Ulrich, who presently is classified either as a senior contract administrator or senior buyer, has been employed by Exxon since 1979. According to the complaint, Ulrich graduated *cum laude* in 1975 from Sam Houston State University with a B.S. degree in chemistry and mathematics, having received state and national recognition for his academic achievements in chemistry. In 1985, he earned his M.B.A. in finance and international business from the University of St. Thomas. In 1984, he was qualified as a Certified Purchasing Manager by the National Association of Purchasing Management, and was recertified in 1989. He also has completed numerous training courses in his professional area.

According to Ulrich, he has not progressed at Exxon to the level merited by his qualifications, abilities and performance. He complains that Exxon utilizes a highly subjective and arbitrary system for job performance evaluation, which includes a ranking system where employees who are determined to be within the same peer group are ranked seriatim from best to worst. Additionally, Exxon supervisors are required annually to prepare a "career potential assessment" of employees, which is critical to an employee's ability to advance within the company. Ulrich alleges that "[in] order to attempt to escape closer scrutiny by state and federal agencies enforcing statutory provisions for equal employment opportunity, Exxon has directed that individuals representing racial minorities be hired and promoted and placed in positions designed to provide maximum visibility to the incumbents." He contends that these efforts have been utilized to manipulate personnel decisions in disregard of individual ability and performance. He asserts, for example, that managers may artificially inflate the rating and ranking of selected minority employees to fill positions in preference to white employees of established merit and experience. As a result of these alleged practices, Ulrich asserts that he has been arbitrarily and capriciously ranked and assessed well below the level merited by his knowledge, training, experience and performance, leading to a loss of pay and promotional opportunities.

Ulrich further contends that he has not been given full credit for his work performance as a result of Lawley's personal bias and animosity toward him. As a result, while under Lawley's supervision, he has not advanced and received compensation increases to the same extent that he did before he was assigned to Lawley's department. He claims that Lawley has caused his job performance to be adversely and inconsistently evaluated, arbitrarily and without explanation, and that Lawley has unfairly criticized his accomplishments. According to Ulrich, Lawley's actions have caused him severe emotional distress and have required him to obtain medical and psychological treatment, for which he sues for intentional infliction of emotional distress. Ulrich also asserts that Lawley's acts and omissions have prevented him from being assigned and compensated at a substantially higher level, thus interfering with Ulrich's beneficial relationship with Exxon.

Defendants assert that Ulrich has not presented even a *prima facie* case of race discrimination. They also contend that the alleged conduct of the defendants was not sufficiently outrageous to give rise to a claim for intentional infliction of emotional distress and that Lawley could not have interfered with Ulrich's beneficial relationship because plaintiff has failed to show that Lawley was acting beyond the course and scope of his employment with Exxon.

II. *Analysis.*

A. *Summary Judgment Standard.*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial

burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). The moving party has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). The burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact. *See Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir.1987). Rather, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Id.* at 324, 106 S.Ct. at 2553. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Assertions unsupported by facts are insufficient to oppose a motion for summary judgment. *Williams v. Weber Management Serv.*, 839 F.2d 1039, 1041 (5th Cir.1987). There must be evidence giving rise to reasonable infer-

ences that support the nonmoving party's position. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir.1987). Mere allegations are insufficient. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir.1987).

█ In considering a motion for summary judgment, the court must view the evidence through the prism of the substantive evidentiary burden. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. at 2513. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir.1987). Summary judgment is appropriate, however, once the movant has met its burden, "[w]here the record as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

### B. *Section 1981 Claim.*

#### 1. *Conduct Occurring Prior to Amendment of Section 1981.*

█ Before assessing whether Ulrich has met his summary judgment burden with respect to his § 1981 claims, it must first be determined which of his claims are properly before the court. Prior to the enactment of the Civil Rights Act of 1991 ("CRA"), § 1981 provided, in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981 (1982).[1] The pre-amendment

---

**1.** Title I, § 101(2) of the CRA added, *inter alia,* the following paragraph to § 1981:

(b) For purposes of this section, the term 'make and enforce contracts' includes the mak-

ing, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

§ 1981 protected only the right to enter into an employment contract and to enforce an employment contract through legal process. *Patterson v. McLean Credit Union,* 491 U.S. 164, 176–77, 109 S.Ct. 2363, 2372–73, 105 L.Ed.2d 132 (1989). Section 1981 protections did not extend to discrimination in the conditions of employment once the initial employment relationship was entered. *Id.* at 176–86, 109 S.Ct. at 2372–78. The Fifth Circuit has held that post–CRA § 1981 does not apply retroactively to conduct occurring before November 21, 1991, the effective date of the Act. *See Landgraf v. USI Film Prods.,* 968 F.2d 427, 432–33 (5th Cir.1992), *cert. granted in part,* — U.S. —, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993); *Rowe v. Sullivan,* 967 F.2d 186, 190 (5th Cir.1992); *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1372–74 (5th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3356 (Sept. 29, 1992). Thus, the conduct about which Ulrich complains prior to that date is actionable only if it involved discrimination in the formation of the employment contract or in the enforcement of the contract through legal process. *See Clayton v. Nabisco Brands, Inc.,* 804 F.Supp. 882, 884 (S.D.Tex.1992).

■ Failure to promote constitutes discrimination in the formation of a contract under pre–CRA § 1981 " '[o]nly where the promotion rises to the level of an opportunity to enter a new and distinct relation between the employee and employer.' " *Lavender v. V & B Transmissions/Auto Repair,* 897 F.2d 805, 808 (5th Cir.1990) (quoting *Patterson,* 491 U.S. at 166, 109 S.Ct. at 2368). *See also Harrison v. Associates Corp. of N. Am.,* 917 F.2d 195, 197–98 (5th Cir.1990). A mere transfer to a different department performing essentially similar tasks is not a new and distinct relationship. *See, e.g., Sitgraves v. Allied–Signal, Inc.,* 953 F.2d 570, 573 (9th Cir.1992); *Wall v. Trust Co. of Ga.,* 946 F.2d 805, 808–09 (11th Cir.1991); *McKnight v. General Motors Corp.,* 908 F.2d 104, 110 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991); *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1311 (7th Cir.1989). This is true even where transfer to a particular division or group is a precondition to receiving a promotion or progressing within a company. *Carter v. South Cent.*

*Bell,* 912 F.2d 832, 840 (5th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). Further, allegations of discrimination in evaluation and compensation were not cognizable under pre–CRA § 1981. *Greggs v. Hillman Distrib. Co.,* 719 F.Supp. 552, 554–55 (S.D.Tex.1989).

■ Thus, Ulrich cannot now maintain his pre–CRA § 1981 claims because they involve neither discrimination in the formation of an employment contract nor enforcement of the contract through legal process. Because all of Ulrich's promotion claims arose prior to November 21, 1991, and none encompasses the opportunity to enter into a new and distinct relationship with Exxon, they are not actionable under § 1981. They are also barred by the two-year statute of limitations applicable in § 1981 cases, as they occurred before April 10, 1990. *See Price v. Digital Equip. Corp.,* 846 F.2d 1026, 1028 (5th Cir. 1988), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 502 (1989). Ulrich's evaluation and compensation claims that arose prior to November 21, 1991, likewise, are not actionable under § 1981. The majority of them are also barred by the statute of limitations. Ulrich's reliance on the continuing violation theory is of no avail, because, prior to November 21, 1991, Ulrich's claims, even if proven, simply did not constitute a violation of § 1981 that could be "continued." Accordingly, Ulrich's pre–CRA § 1981 claims must be dismissed.

2. *Conduct Occurring Subsequent to Amendment of § 1981.*

The United States Supreme Court has construed § 1981 as affording a federal remedy against discrimination in private employment on the basis of race to white persons as well as to minorities. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 287, 96 S.Ct. 2574, 2582, 49 L.Ed.2d 493 (1976). Thus, like Title VII, § 1981 prohibits discriminatory preference for *any* racial group, *minority* or *majority. Id.* at 279, 96 S.Ct. at 2578. Ultimately, to prevail on a § 1981 claim, Ulrich must prove purposeful discrimination by defendants because he is white. *See, e.g., Brown v. American Honda Motor Co.,* 939

F.2d 946, 949 (11th Cir.1991), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992); *Lee v. Washington County Bd. of Educ.,* 625 F.2d 1235, 1237 (5th Cir.1980).

Because Ulrich bears the ultimate burden of proof in this case and the initial burden of production, to avert summary judgment at the outset, he must make a showing of specific facts sufficient to establish the existence of each essential element of a *prima facie* case of employment discrimination.[2] *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Lemnitzer v. Philippine Airlines, Inc.,* 816 F.Supp. 1441, 1447 (N.D.Cal.1992); *Wiant v. Mobile County Personnel Bd.,* No. 91–0290–AH–S, 1992 WL 510313 at *5, 1992 U.S. Dist. LEXIS 2833, at *16 (S.D.Ala. Mar. 5, 1992); *Sinnovich v. Port Auth. of Allegheny County,* No. 89–1524, 1992 WL 220829, at *4, 1992 U.S. Dist. LEXIS 13618, at *14 (W.D.Pa. Mar. 2, 1992). The test for determining intentional discrimination in suits under § 1981, including the establishment of a *prima facie* case, is the same as the formulation used in Title VII discriminatory treatment cases. *Patterson,* 491 U.S. at 185–87, 109 S.Ct. at 2377–78; *Brown,* 939 F.2d at 949; *Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 824 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). Therefore, the framework for establishing a *prima facie* case in Title VII cases under *McDonnell Douglas* and *Burdine* applies equally to § 1981 cases. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The Supreme Court recognized, however, that the *McDonnell Douglas* test is not necessarily applicable in every respect to differing factual situations. *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.[3]

In a reverse discrimination case, some courts have required a heightened standard for establishing a *prima facie* case. In addition to establishing the traditional *McDonnell Douglas* elements, the plaintiff must also establish background circumstances that support an inference that the employer is "one of those unusual employers who discriminate against the majority." *See, e.g., Notari v. Denver Water Dept.,* 971 F.2d 585, 588–89 (10th Cir.1992); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985); *Parker v. Baltimore & Ohio R.R.,* 652 F.2d 1012, 1017 (D.C.Cir.1981); *Groat v. Olympia Fields Ford Sales, Inc.,* No. 91 C 0606, 1993 WL 81356, at *3, 1993 U.S. Dist. LEXIS 3457, at *8 (N.D.Ill. Mar. 18, 1993); *Bennett v. Texas Bd. of Pardons & Paroles,* 670 F.Supp. 196, 198–99 (E.D.Tex.1987). Other courts, including the Fifth Circuit, apply the traditional *McDonnell Douglas* test without alluding to an alternative, heightened test. *See, e.g., Wilson v. Bailey,* 934 F.2d 301, 304 (11th Cir.1991); *Young v. City of Houston,* 906 F.2d 177, 180 (5th Cir.1990); *Wiant,* 1992 U.S.Dist. LEXIS 2833, at *15; *Sinnovich,* 1992 WL 220829, at *4, 1992 U.S. Dist. LEXIS 13618, at *14. In contrast, the court in *Collins v. School Dist. of Kansas City,* 727 F.Supp. 1318, 1322 (W.D.Mo.1990), soundly criticized the heightened standard, finding it was "simply unconscionable for the courts to erect this arbitrary barrier which serves only to frustrate those who have legitimate Title VII claims." Yet other courts, while recognizing and endorsing the rationale behind adopting the modified test in reverse discrimination cases, leave the determination to

---

**2.** Apparently relying on the perceived failure of Ulrich to state a *prima facie* case, defendants do not attempt to articulate any legitimate, non-discriminatory reasons for Ulrich's treatment.

**3.** In *McDonnell Douglas* and *Burdine,* the United States Supreme Court set forth the burden of proof in an individual disparate treatment action. A plaintiff may establish a *prima facie* case of discrimination by proving: (1) membership in a protected group; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a person not in the protected group. *Burdine,* 450 U.S. at 252–253, 101 S.Ct. at 1093–1094; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. A *prima facie* case may also be established by showing that the plaintiff was within a protected class, he was qualified for the job in question, and employees outside the protected class were treated more favorably. *Waggoner v. City of Garland,* 987 F.2d 1160, 1163 (5th Cir.1993); *Johnson v. Chapel Hill Indep. School Dist.,* 853 F.2d 375, 381 (5th Cir.1988); *Thornbrough v. Columbus & Greenville R.R.,* 760 F.2d 633, 639 (5th Cir.1985).

the circuit court when it is presented an opportunity to announce the adoption of a heightened standard. *See Lemnitzer*, 816 F.Supp. at 1448.

Despite making it clear that § 1981, as well as Title VII, protects individuals who are members of historically or socially favored groups, the Supreme Court has not addressed whether the showing required to state a *prima facie* case must be modified or altered in a reverse discrimination case. The Supreme Court did find, however, that a reverse discrimination case challenging a county transit board's voluntary affirmative action plan fit "readily within the analytical framework set forth in *McDonnell Douglas* . . . ." *Johnson v. Transp. Agency, Santa Clara County*, 480 U.S. 616, 626, 107 S.Ct. 1442, 1449, 94 L.Ed.2d 615 (1987).

■ In view of the silence of the Supreme Court and the Fifth Circuit on this issue, this court declines to impose a heightened standard for establishing a *prima facie* case on a reverse discrimination claimant. This seems more in keeping with the purpose behind the anti-discrimination statutes. The principal focus of the statutes is the protection of the individual employee, rather than the protection of the protected group as a whole. *See Connecticut v. Teal*, 457 U.S. 440, 453–54, 102 S.Ct. 2525, 2533–34, 73 L.Ed.2d 130 (1982); *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 708, 98 S.Ct. 1370, 1375, 55 L.Ed.2d 657 (1978); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir.1984). Section 1981, like Title VII, does not "give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Teal*, 457 U.S. at 455, 102 S.Ct. at 2535; *Nix*, 738 F.2d at 1186. Indeed, "a given employer may discriminate against an individual white worker even when no evidence demonstrates that the employer generally favors workers who belong to historically disadvantaged groups." *Notari*, 971 F.2d at 590. Accordingly, this court finds no reason to impose a more onerous burden on reverse discrimination claimants for proceeding beyond the *prima facie* stage of litigation.

In this case, however, the only evidence of employment discrimination that Ulrich offers is his own deposition testimony that lesser qualified racial minorities have advanced ahead of him in compensation and promotional opportunities. Ulrich contends that he has been "displaced" by every minority employee who ranked above him in his various peer groupings, meaning that although he did not aspire to their specific positions, because of the minority employees' relative rankings, "money flowed from [his] pocket into theirs." He also asserts that his educational credentials and professional certification make him a better-qualified employee than many of the whites who have ranked above him, and confirms that he has likewise been "displaced" by these higher-ranking whites.

The sole evidence of Ulrich's relative rankings, encompassing the years 1983 through 1992, was proffered by Exxon. Because Ulrich's pre–CRA § 1981 claims are not actionable, the only evidence presently before the court that may be taken into consideration on this point is the relative rankings for 1991 and 1992. In 1991, Ulrich ranked 47th out of 60 employees (23%), ranking below 40 white and 6 minority employees. In 1992, Ulrich was ranked 42nd of 55 employees (25%), ranking below 38 white and 3 minority employees. Although in his deposition, Ulrich names a number of minorities whom he views as being less qualified and poorer employees that he, he fails to present any evidence concerning the specific identities, qualifications, experience, or performance of the 6 minority employees who ranked above him in 1991 or the 3 minority employees who ranked above him in 1992. Moreover, Ulrich presents no basis for his subjective beliefs concerning the performance of the minority employees he names; he has never supervised any of them. In addition, Ulrich admits that an employee holding an M.B.A. degree or Certified Purchasing Manager credentials would not always be a better performer in terms of what Exxon is seeking in a particular job.

■ To establish a claim of disparate treatment, Ulrich must show that Exxon gave preferential treatment to a minority employee under "nearly identical" circum-

stances. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990). Without more specific information about the higher ranking minority employees, this court cannot say that their circumstances were "nearly identical" to that of Ulrich. The fact that a white employee is passed over in favor of a minority employee does not necessarily amount to discrimination or give rise to an inference of discrimination. *See Ustrak v. Fairman*, 781 F.2d 573, 577 (7th Cir.), *cert. denied*, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986); *Groat*, 1993 WL 81356, at *3–4, 1993 U.S. Dist. LEXIS 3457, at *17.

In an apparent effort to bolster his case, Ulrich states in his deposition that one of his supervisors told him that he had been "burned, snake bit, and screwed" in the ranking process. Yet, he does not claim that the supervisor attributed Ulrich's treatment to the fact that he is white, nor does he say that the supervisor thought he had been mistreated in relation to minority employees. Ulrich also asserts that he has not been placed in "high profile" positions, like some of the minorities, which might have highlighted his contributions. He admits, however, that white employees have also been placed in "high profile" positions and that minority employees should not be barred from such positions by virtue of their race.

■ Ulrich contends that the unfair advantages, which he perceives minority employees to enjoy, stem from Exxon's interpretation of its affirmative action plan. Once again, he fails to advance any specific facts in support of his contention. He does not even attach a copy of the affirmative action plan to his response or detail its relevant provisions, much less explain how the specific minority employees ranked above him benefited from the plan. It is well established that the presence of an affirmative action plan is not evidence of discrimination against the majority. *Christensen v. Equitable Life Assurance Soc'y*, 767 F.2d 340, 343 (7th Cir.1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986); *Groat*, 1993 WL 81356, at *3–4, 1993 U.S. Dist. LEXIS 3457, at *17. Yet, Ulrich makes no effort to tie any specific

provisions of the plan, or their interpretation by Exxon officials, to his own situation and allegations of racial discrimination.

Ulrich also disputes the accuracy of Lawley's affidavit, attached to defendants' motion for summary judgment, claiming that the question of the credibility of the affidavit raises a fact issue. Ulrich cannot avoid summary judgment, however, on the remote possibility that at trial he might be able to convince a jury that Lawley's testimony is unbelievable. "[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir.1983). *Accord Playboy Enter., Inc. v. Public Serv. Comm'n*, 906 F.2d 25, 40 (1st Cir.), *cert. denied*, 498 U.S. 959, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 293 (9th Cir.1983); *Soar v. National Football League Players' Ass'n*, 550 F.2d 1287, 1289 n. 4 (1st Cir.1977).

■ A subjective belief of discrimination, however genuine, cannot alone be the basis for judicial relief. *Little*, 924 F.2d at 94; *Sherrod v. Sears, Roebuck & Co.*, 785 F.2d 1312, 1316 (5th Cir.1986); *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). Here, Ulrich does not even appear genuinely to believe that he is a victim of race discrimination, as he makes no mention or allusion to race discrimination in his twenty-seven page letter to the Manager of Exxon's Employee Relations Department, attached to his response, in which he requests an investigation and chronicles numerous instances of perceived mistreatment while at Exxon. In *Groat*, 1993 WL 81356, at *6, 1993 U.S. Dist. LEXIS 3457, at *16, the court found that a contemporaneous document setting forth an employee's complaints, which, like Ulrich's letter, makes no reference to racial discrimination, confirms that race is in fact not an issue. In this situation, Ulrich's reverse discrimination claim appears only to be an afterthought, suggested belatedly by counsel, and seized upon as a vehicle to bring Ulrich's

generalized dissatisfaction with his treatment by Lawley and Exxon before the court.

■ The court acknowledges that subjective evaluation procedures, like those involved in the instant case, which often appear to be arbitrary and are always susceptible to discriminatory application, should be carefully scrutinized. *See Ramirez v. Hofheinz*, 619 F.2d 442, 446 (5th Cir.1980); *Rowe v. General Motors Corp.*, 457 F.2d 348, 359 (5th Cir. 1972). Ulrich has made no showing, however, that the subjective evaluation procedures were applied to him in a discriminatory manner because of his race. Were the court to conclude that a different method of evaluation might operate more fairly, this would not assist Ulrich, as the discrimination laws are "not intended to be a vehicle for judicial second-guessing of business decisions, nor ... to transform the courts into personnel managers." *Waggoner*, 987 F.2d at 1165. *See also Furnco Constr. Co. v. Waters*, 438 U.S. 567, 576–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988).

In summary, Ulrich's proffered summary judgment evidence consists exclusively of conclusory and speculative allegations of race discrimination which are unsupported by specific facts. In the court's view, this evidence is insufficient to support a *prima facie* case of employment discrimination or to raise a genuine issue of material fact.[4] While summary judgment is often ill-suited for sorting out nebulous questions of motivation,[5] that is not always the case. As the First Circuit stated in *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990):

> Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.

*See also Waggoner*, 987 F.2d at 1164; *Elliott*, 714 F.2d at 566. Because Ulrich's post-CRA

§ 1981 claims rest solely on conclusory allegations, improbable inferences, and unsupported speculation, summary judgment for defendants is proper here.

*C. Intentional Infliction of Emotional Distress.*

■ In its recent decision, *Twyman v. Twyman*, 855 S.W.2d 619, 622 (Tex.1993), the Texas Supreme Court joined forty-six other states in expressly adopting the tort of intentional infliction of emotional distress as set out in the RESTATEMENT (SECOND) OF TORTS § 46 (1965). In order to recover for this tort, Ulrich must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused him emotional distress; and (4) the emotional distress suffered by him was severe. *Id.* at 621. *Accord Ugalde v. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993); *Ramirez v. Allright Parking El Paso, Inc.*, 970 F.2d 1372, 1375 (5th Cir.1992); *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33 (5th Cir.1992); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989). While "extreme and outrageous" is an amorphous phase that escapes precise definition, there appears to be a consensus that conduct is "outrageous" if it surpasses "all bounds of decency," such that it is "utterly intolerable in a civilized community." *See Ugalde*, 990 F.2d at 243; *Johnson*, 965 F.2d at 33; *Dean*, 885 F.2d at 306 (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt.d). In *Dean*, the Fifth Circuit stated:

> [L]iability for [outrageous] conduct has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.... Generally, the case is one in which a recitation of the facts to an average member of the commu-

---

4. Ulrich's reliance on *Thornbrough*, 760 F.2d at 644, to avoid summary judgment is misplaced, as it was decided before the Supreme Court clarified the burden imposed upon a non-moving party to defeat summary judgment in its 1986

"trilogy" of cases—*Celotex, Anderson,* and *Matsushita.*

5. *See, e.g., Honore,* 833 F.2d at 569.

nity would lead him to exclaim, "Outrageous."

*Id.* Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Ugalde,* 990 F.2d at 243; *Johnson,* 965 F.2d at 33; *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir.1991). There is no occasion for the law to intervene in every case where someone's feelings are hurt. *Id.*

██ Specifically, in the employment context, the Fifth Circuit, applying Texas law, has repeatedly stated that a claim for intentional infliction of emotional distress will not lie for mere "employment disputes." *Johnson,* 965 F.2d at 33. The courts recognize that in order to manage its business properly, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees. *Johnson,* 965 F.2d at 34; *Wilson,* 939 F.2d at 1143. Even conduct which may be illegal in an employment context may not be the sort of behavior that constitutes "extreme and outrageous" conduct. *Ugalde,* 990 F.2d at 243.

██ Keeping this standard in mind, Ulrich's myriad complaints—lack of feedback, excessive criticism for tardiness and poor grammar, lack of recognition for accomplishments, being requested to give more than desired to the United Way, a supervisor's failure to review his work in a timely manner, an inapropos joke, being mistakenly accused of absenteeism, lower evaluations than merited, being characterized as having an "attitude problem," and being aggressively questioned without time for response—fall clearly within the rubric of "employment disputes," for which no legal redress is available. They seem to be typical complaints voiced daily by a multitude of workers across the nation. Many of Ulrich's grievances stem from disagreements with Lawley's management style. Yet, personality conflicts with a supervisor certainly are not uncommon occurrences, nor do they give rise to an actionable legal wrong. Ulrich's frustration undoubtedly is shared by many people, who, when looking back on their careers, realize that they have not achieved their expectations or fulfilled their dreams of twenty years ago. This "angst," however, is more properly addressed by the medical or religious community, rather than by a court of law.

Unlike conduct found to be actionable in other cases, Ulrich makes no showing of atrocious affronts to his dignity or even that he has ever been demoted, discharged, or degraded by defendants. He presents no evidence that he has been assigned demeaning tasks, had his salary decreased, been accused of criminal activities, or been subjected to ridicule, harassment, or taunting by fellow employees. The conduct alleged by Ulrich is far less egregious than actions found not to constitute intentional infliction of emotional distress as a matter of law in a number of cases. *See, e.g., Ramirez,* 970 F.2d at 1376–77; *Johnson,* 965 F.2d at 34; *Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); *Taylor v. Houston Lighting & Power Co.,* 756 F.Supp. 297, 302 (S.D.Tex.1990); *Horton v. Montgomery Ward & Co.,* 827 S.W.2d 361 (Tex.App.—San Antonio 1992, writ denied). Moreover, the majority of Ulrich's claims are barred by the two-year statute of limitations. Tex.Civ.Prac. & Rem.Code § 16.003(a) (1986). While Ulrich may have had an "extreme" reaction to these typical and rather mundane stresses of the working world, the defendants' conduct is far from "extreme." In sum, a recitation of the facts alleged by Ulrich leads this court to exclaim, "Outrageous ... NOT!" Thus, Ulrich's claim of intentional infliction of emotional distress must be rejected.

D. *Tortious Interference with Beneficial Relationship.*

██ To prevail on his claim of interference with beneficial relationship, Ulrich must prove: (1) that a third party interfered with Ulrich's employment relationship with Exxon; (2) that the third party's interference was willful and intentional; (3) that the intentional interference was a proximate cause of damage to Ulrich; and (4) that Ulrich suffered actual damage and loss. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991); *Eads v. American Bank,* 843 S.W.2d 208, 210 (Tex.App.—Waco 1992, no writ).

■ "A party to a business relationship cannot tortiously interfere with himself." *American Medical Int'l v. Giurintano,* 821 S.W.2d 331, 335 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Baker v. Welch,* 735 S.W.2d 548, 549 (Tex.App.—Houston [1st Dist.] 1987, writ dism'd w.o.j.); *Frost Nat'l Bank v. Matthews,* 713 S.W.2d 365, 369 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.). Instead, liability must be founded upon the acts of an interfering third party. *Schoellkopf v. Pledger,* 778 S.W.2d 897, 902 (Tex.App.—Dallas 1989, writ denied); *Baker,* 735 S.W.2d at 549. Thus, as a party to Ulrich's employment relationship, Exxon is legally incapable of tortiously interfering with its own relationship.

■ Similarly, an employee or agent, such as Lawley, generally is not regarded as a third party. *Baker,* 735 S.W.2d at 549. Rather, his legal identity is that of his principal. *Id.* Thus, an employee generally is not personally liable for interference with his employer's business relations. *Id.; Gonzalez v. Gutierrez,* 694 S.W.2d 384, 388 (Tex. App.—San Antonio 1985, no writ); *Terry v. Zachry,* 272 S.W.2d 157, 160 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.). It is only where the employee is acting beyond his authority and in furtherance of personal objectives, can the employee's actions constitute tortious interference. *See B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 553 (5th Cir.1981). It must be established that the employee was motivated by personal animus or greed. *Id.*

In his complaint, Ulrich alleges that "[m]otivated by personal animosity for his personal purposes and utilizing the authority vested in him as a managing agent of Exxon Company, U.S.A., to make and implement policy with respect to Plaintiff, James R. Lawley, has engaged in a series of malicious and intentional actions to intimidate, harass, disparage, and disadvantage the plaintiff." While Ulrich alleges that Lawley was motivated by personal animosity, he has presented no summary judgment evidence to support that assertion. All the actions about which Ulrich complains fall within the normal course and scope of a supervisor's duties. Ulrich admits that Lawley was "utilizing the

authority vested in him as a managing agent of Exxon" to perpetuate the allegedly wrongful conduct. Moreover, elsewhere in his complaint, Ulrich alleges that Exxon ratified and adopted Lawley's acts, which also places them within the course and scope of his employment.

In any event, Ulrich cannot rest solely on his pleadings in opposing defendants' motion for summary judgment. To prevail, Ulrich must set forth specific facts showing the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514; *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56. Bare assertions, unsupported by facts, are insufficient to defeat summary judgment. *Williams,* 839 F.2d at 1041; *Miller v. GTE Corp.,* 788 F.Supp. 312, 315 (S.D.Tex.1991). Because Ulrich has set forth no facts showing that Lawley was furthering his personal objectives in dealing with Ulrich or acting outside the scope of his authority, Ulrich's claim for tortious interference must fail. *See Taylor,* 756 F.Supp. at 302; *American Medical Int'l,* 821 S.W.2d at 336; *Gonzalez,* 694 S.W.2d at 388.

### III. *Conclusion.*

There exist no genuine issues of material fact with respect to Ulrich's claims of racial discrimination, intentional infliction of emotional distress, or tortious interference with beneficial relationship, and defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment is GRANTED.

### FINAL JUDGMENT

In accordance with the summary judgment granted in this case, the Court enters Final Judgment in favor of Exxon Company, U.S.A., a Division of Exxon Corporation, and James Lawley. Michael W. Ulrich shall take nothing by his suit.

This is a FINAL JUDGMENT.

SIGNED in Houston, Texas on this the 3rd day of June, 1993.